Ruffin, Chief Justice.
 

 The particular ground on which his Honor held the judgment in the suit by attachment to be void, and that the lessor of the plaintiff derived no title by his purchase at the execution sale, is, that Creecy, as shown by evidence, had not lived in Perqui-
 
 *143
 
 mons, but was a resident of Chowan for several years before and up to the time at which he absconded; and that the plaintiff in that suit stands affected by every irregularity in the process, and the subsequent proceedings thereon. The record, however, states other exceptions taken by the defendant to the validity of that judgment, and-his counsel here have relied on several of them, and urged as a general proposition, that attachments are not known to the common law, and are in derogation of the common right of every person who is to be affected by judicial proceedings, to have personal notice, and the opportunity of making a full defence; and therefore, that a proceeding by attachment is not valid to any purpose, unless the directions of the statutes be in all respects observed.
 

 . The court is not insensible to the injustice that may be done, and, we believe, is frequently done here and in other states, and especially to non-residents, in suits commenced by this process; by which the seizure of a trifling article founds a case for the recovery of a large demand; but we think, that we are now obliged to hold, that such judgments rendered in this state have the same operation and effect here, as those rendered by the same courts in other actions have.
 

 The whole argument on the part of the defendant has been met
 
 in limine
 
 by an objection from the other side, that if the judgment be void, it can be avoided only by the defendant therein; and that it cannot, be deemed so entirely null, that the present defendant, without showing any connexion between him and Creecy, can allege it. This position is not without force, nor entirely destitute of authority. If Creecy, knowing the debt to be just, submits to the sale of his property under it, a mere wrongdoer, one having no colour of right, ought not to gain the possession, and defy the purchaser. If it be not so absolutely nugatory, that Skinner can treat his judgment as null, and, saying that his original cause of action is not merged in it, bring a new action thereon, it would seem that third persons ought not to set the judgment at nought. We know that in England the slightest steps are fatal to
 
 *144
 
 outlawries, and they are reversed upon objections in which there is neither sense nor reason, as Mr. Justice Buller said in
 
 Rex
 
 v.
 
 Almon,
 
 5 Term Rep. 202. Indeed, those on mesne civil process are set aside of course upon the party’s appearing and putting in bail, as in our attachments — both being designed to compel an appearance. Yet in
 
 Symonds
 
 v.
 
 Parminter, 1 W. Blk. 20,
 
 where process was sued against two on a joint contract, and one of them was prosecuted to outlawry, and the plaintiff declared against the other alone, the latter was not allowed to plead the illegality of the outlawry, and insist thereon that the plaintiff could not come against him alone: for, said Lee, Chief Justice, it is not void, but voidable at the instance of the party himself, and a stranger shall not demand of the court to pronounce the out - la wry null.
 

 The principle that the judgment of a court of record is conclusive, until set aside or reversed, applies to all courts tc
 
 *145
 
 writo/ ®1Tor luns higher ~ourt’ ??, from which an appeal hj¡j&a c°urt, oecds ae-°" «“-ding to 0f the < these f1011 law > because < are ^medies for any ^inferior tribunals, having a sPeoi,al 31111 peculiar jurisdic-otherwise Their im-mayin^** some in-restrainedsa in their byprohibi-court of fuperin-tending mothers,°r “a[e|jebcor having *®'dr. P™" brought up
 
 ^^me~
 
 
 *146
 
 quashed; and in yet others, may he questioned by plea.
 

 
 *144
 
 But, as upon another trial the defendant might show some interest in himself, and in that event this point would not be decisive of the rights of the parties, the court has considered the others made in the argument.
 

 The general rule has not been questioned by the defendant’s counsel, that the judgment of a court having jurisdiction of the subject-matter, and proceeding, according to the course of the common law, by declaration, plea, issue, trial by jury and judgment of record, cannot be collaterally impeached, but until it be set aside by the same court, or reversed in a superior tribunal, is conclusive. Such is, unquestionably, the general rule of law. The reason is, that the judgment itself is evidence of the right determined in it, or debt recovered ; and is evidence so high, that the denial of the right can only be made in the form of a plea denying the existence of the record alleged. The principle applies to all courts to which a writ of error runs from a higher court, or from which an appeal lies to a higher court, which itself proceeds according to the common law ; because these are adequate remedies for any error. As to inferior tribunals, or those having a special and peculiar jurisdiction, it is otherwise. Their improper acts may in some instances, be restrained in their progress, by prohibitory writs from the court of
 
 *145
 
 general superintending powers ; or in others, may be corrected by having their proceedings brought up by
 
 certiorari
 
 and quashed ; and, m yet others, may be questioned by plea. But we are not aware of any instance in which the subject-matter is within the jurisdiction, and a cause is once constituted in a court of record, that the judgment is not conclusive between the parties, or any other plea is admissible, except
 
 nul tiel record:
 
 and that without regard to the process by which the action was commenced.
 

 The judgment here is for a certain sum of money; and to raise the same the premises in dispute were sold under execution. Had the court power to pronounce such a judgment in any case; and had it jurisdiction of the cause of action in this case? County Court of Perquimons had not jurisdiction, because It is insisted, that the Creecy had not resided there, and the authority to a justice of the peace to issue an attachment is restricted to one against the estate of a person absconding from his own county. By the 25th and 27th sections of the act of 1777,
 
 (Rev. c.
 
 115,) provision is made relative to attachments in the Superior Courts. Any justice of the peace is autho- * ** “ * rized to issue them, as well as a judge of the Superior Court, returnable to the court where the suit is cognizable; which must mean such of the courts as would, according to other parts of the act, have jurisdiction over the persons, if the process had been personally served — in which last case, the defendant has a plea in abatement, if neither he nor the plaintiff live in the district. The 65th section is that which provides for suits by attachments to the County Court; and it authorizes every justice of the peace of the County Courts, upon complaint made for
 
 any debt or damage cognizable in the County Courts of Pleas and Quarter Sessions in this state,
 
 to grant an attachment against the estate of any person removing out of the county privately, returnable to the court of such county, observing the rules appointed for those returnable to the Superior Courts. We agree in the observation of Chief Justice Taylor, in the
 
 State Bank
 
 v.
 
 Hinton and Brame,
 
 1 Dev. Rep. 397, that there is no law in the statute
 
 *146
 
 book which more imperiously demands a strict construction, than the attachment law; and very trivial objections to the process and to the jurisdiction, as to the persons, and the like, are to be listened to, if brought forward at the proper time. We also entertain no doubt, that the court of “
 
 such
 
 county,” to which the writ is to be made returnable, according to the 65th section, is “
 
 the
 
 county” of the justice, and “
 
 the
 
 county” out of which the debtor has removed or is removing privately; and if the,case rested at the process, and the question concerned its regularity, it would, we think, be against the plaintiff; but it does not. The question now concerns the effect of the judgment for the debt — that “debt being cognizable in the County Courts of this state.” As we conceive, the jurisdiction of suits by attachment is not specially delegated to a particular court in a particular case, and in that only; but that process is given instead of the
 
 capias
 
 to all courts to enable them to exercise their jurisdiction over the subjects-matter generally which are within t heir jurisdiction. The subject of this suit is a debt, and is within the jurisdiction of the County Courts. By the acts of 1777,
 
 (Rev. c.
 
 115, s. 56); and 1785,
 
 (Rev. c.
 
 233,) the County Courts are made courts of record, with general jurisdiction to try and determine actions of debt and all causes what-sover at the common law, with certain specified exceptions. The jurisdiction is not limited to causes of action, arising in the county. But they cannot issue original process, running out of their own county, though subpoenas and final process from them may run into any part of the state. The restriction upon their process seems necessarily to limit their jurisdiction to cases in which the original process is served in their county; but that seems to be the only restriction upon their jurisdiction. As to the subject-matter, it is as extensive as it can be. When, therefore, the person or the thing, which it is necessary to have before the court in order to constitute a cause in court, is found and taken within the county, the cause is then constituted ; and if the matter be within the cognizance of the court, the judgment rendered thereon is entitled to the faith and credit of record evidence. Its ' efficacy cannot be impugned by the allegation that
 
 *147
 
 another court had concurrent jurisdiction of the subject-j j matter, and that the defendant had a right to have the cause tried in such other court. That is not an objection of the total want of jurisdiction; which every court must take notice of, because that renders any adjudication null; but it is an objection to the exercise of the jurisdiction between the particular parties, upon the ground of a provision in the law for their convenience, and is therefore to be brought to the notice of the court by putting the fact on the record b)plea. The distinction is between the entire want of jurisdiction, which no consent of the parties can confer, and a general jurisdiction, except in particular cases, or between particular persons, in which the exception must appear upon objection made. A familiar example is furnished in the clauses of the act of 1777, which prescribe in what Superior Court suits shall be brought; but if brought otherwise, advantage can only be taken by plea in abatement. So, in the case before us— all County Courts have, by one general provision, jurisdiction of debts at common law. That is not cut down to a special jurisdiction by another particular provision giving jurisdiction of debts in a certain case to a particular court; for in each court the trial is in the same mode, the right determined upon the same rule as to the law, and as to the nature and extent of the proof. Such a provision is therefore merely for the ease of the party; and consequently must be availed of either in the progress of the cause, orx perhaps, in some cases, by way of reversal, and not by averment of the excess of jurisdiction. In the particular case before us, although the affidavit does not, the attach- ° ment itself purports to state that Creecy had absconded from Perquimons county; and it would be exceedingly difficult to find a ground upon which the record can be contradicted as to
 
 that fact
 
 by evidence
 
 in pais.
 
 But the other is a sufficient answer, namely, that the cause of action was within the jurisdiction of the court, and there was no objection from the defendant.
 

 
 *146
 
 There is no law in the statute book which more demands a strict construction, than the attachment law; and very trivial objections to the process and to the jurisdiction as to the persons, and the like, are to be listened to, if brought forward at the proper time.
 

 
 *147
 
 If the attachment states that the debtor from the which issuesn it cannot be contradicted as to thatfaetby evi.denaoe
 

 It is said, however, that in this respect attachments differ from other suits; because the defendant is not • * served with process, and may not appear, and when he
 
 *148
 
 does not appear, cannot be considered as waiving any thing. The argument may be properly urged for reversing a judgment in attachment for errors the party is deemed to have waived by appearing, and pleading in bar, or to be cured by having a verdict found against him. It is also forcible against the policy of giving efficacy to an adjudication rendered in the party’s absence, and without notice; or at all events, beyond the condemnation of the thing attached. The mischief' is in giving full effect to such a judgment, how regular soever may have been the observance of the rules for prosecuting the suit, rather than in allowing it when some of those rules, as to the manner of proceeding, may have been overlooked. But if the legislature thinks it proper to enact that such a judgment shall have the operation of judgments in actions commenced by original process personally served, the statute is to be quarreled with, but not the court for giving credence to the record. Such, we think, is our statute law. The judgment is not
 
 in rem,
 
 but personal. The act goes on the idea that seizing property and advertisement would give notice, and therefore they are made to constitute notice. Consequently, if the party will not or does not appear, it is treated as his default; and judgment is entered against him personally.
 

 By the 23d section of the court law, judicial attachments in the Superior Courts are given; and it is provided that the goods attached, unless replevied, shall remain in the custody of the sheriff until
 
 final judgment,
 
 and then be disposed of in the same manner as goods taken in execution on a writ of
 
 fieri facias;
 
 and that if
 
 the judgment
 
 be not satisfied by the sale of the goods attached,
 
 the plaintiff may have execution for the residue.
 
 The 25th section gives original attachments in the same courts, and
 
 the same proceedings are directed to be had thereon
 
 as on judicial attachments. Among the rules prescribed for the County Courts by the 73d section, the declaration is to be served on the defendant or his attorney five days before court, and filed on the first day of the term, or at the calling of the cause. The service of it is dispensed with in the 71st section in judicial attachments.
 
 *149
 
 thereby given in the County Courts “ to enforce appearance,” and it is provided, that if the sheriff shall return the writ executed,
 
 the plaintiff shall file his declaration according to the rules of the court, and proceed as in other cases.
 
 By the 65th section original attachments are likewise given in the County Courts for any debt, or damage cognizable therein, and
 
 the like judgment, remedy, relief and proceedings shall he had thereupon, as in like cases are grantable in the Superior Court.
 
 This language is explicit, that he who sues by attachment is to declare for his debt as at common law, and to recover a judgment, not against the thing, but against the defendant, also as at common law. Accordingly, it has been held-, that the plaintiff is not restricted to a judgment of condemnation and a
 
 venditioni exponas,
 
 but may issue a
 
 fieri facias
 
 against the estate generally of the defendant.
 
 Amyett
 
 v.
 
 Backhouse,
 
 3 Murp. Rep. 63.
 
 English
 
 v.
 
 Reynolds,
 
 N. C. Term Rep. 92, was an action of debt for a balance due on such a judgment after a sale of the property attached, and the question was made, whether the record was evidence, and if so, whether it was
 
 prima facie
 
 or conclusive; and the court held it to be conclusive; in other words, that
 
 nul tiel record
 
 was the only plea. In the cases, yet nearer to the passing of the act, of
 
 Haughton
 
 v.
 
 Allen,
 
 Conf. Rep. 157; and
 
 Bickerstaff
 
 v.
 
 Dellinger,
 
 Ibid. 299, it was laid down, that our attachments were not like those founded on the local custom of London, but were governed by our own statutes as general laws, and that the judgments in them were to be reviewed by writ of error, as the judgments of courts proceeding according to the course of the common law. More recently, in
 
 Swaim
 
 v.
 
 Fentress,
 
 4 Dev. Rep. 601, upon a
 
 certiorari
 
 the Superior Court had superseded the judgment of the County Court in an attachment as being void for certain errors and irregularities; but this court reversed the decision, upon the ground, amongst others, that the record could only be brought up to be examined upon the matter of law by writ of error, and that it could not be quashed. We then thought that we were obliged to look at the judgment, as that of a court of record, proceeding according to the course of the common
 
 *150
 
 law. In fine, to impeach it, by plea or evidence, when the defendant has either appeared, or when the cause has been constituted in court, as contemplated in the act, by a seizure of property and notice, instead of a
 
 capias
 
 or personal summons, could be allowed only upon the ground, that the legislature have not the power of dispensing with the personal service of process, and that the act is unconstitutional ; a position not taken at the bar, and in view of the statute books of the American states, it cannot be supposed that it will be taken.
 

 It has been further insisted, that the judgment is a nullity, because the attachment was not served on the property of Creecy. If such be the fact, and it can be seen on the record, the Court has no hesitation in expressing an assent to the conclusion. It is of the substance of the justice due to a defendant, that he should have notice of the action. So much is held out to him in this statute. But a
 
 dis-tringas
 
 cannot give the notice, unless a distress be made ; and therefore it is essential, in whatever court the suit be brought, whether it be one of universal, as well as one of the most limited jurisdiction; for the question is not, whether there be a judge, but whether there are allegations between these parties, on which there can be an adjudication. A record is not evidence, except of its own existence, between any persons but those who are parties to the proceeding stated in it, or their privies. If the proceeding be not
 
 in rem,
 
 and there be no parties, there can be no adjudication; and it can appear that persons were made parties, only when the record states their appearance in court, or the official service of the process of the court. This seems to be a first principle, not needing the support of an authority, but it is stated in
 
 Pearson
 
 v.
 
 Nesbit,
 
 1 Dev. 315 ;
 
 Armstrong
 
 v.
 
 Harshaw,
 
 Ibid. 187, and
 
 White
 
 v. Albertson, 3 Dev. Rep. 341. As applied to attachments, it renders indispensable a distress of-the debtor’s property, in order to constitute the cause in court; and unless that appear of record, the proceeding is
 
 ex parte,
 
 and not binding on the debtor. In
 
 Amyett
 
 v.
 
 Backhouse,
 
 it is said, that the only effect of issuing the attachment, and having it levied, is to give the court jurisdiction, whereby judgment
 
 *151
 
 may be obtained. There is, perhaps, an inaccuracy in the use of the term jurisdiction, for the defect is, that the court has no person or cause before it. But the inaccuracy is no wise material to the present inquiry. In
 
 Haughton
 
 v.
 
 Allen,
 
 it was held that a garnishee was entitled toa writ of error on the judgment against him, although the effect might be to reverse, or reduce to a nullity the judgment against the defendant in the attachment; and if was further held, that such would be the consequence, if the attachment was served only in the hands of the garnishee. The two judgments were considered as so connected, that ■one could not exist without the other; for unless the plaintiff find property in the hands of the garnishee, he cannot have judgment against the defendant; and if the judgment against the garnishee be reversed, there is nothing then to support the principal judgment, which must fall of course, each part being essentially necessary to the other. In
 
 Armstrong
 
 v.
 
 Harshaw,
 
 several attachments were served on a parcel of corn, supposed to belong to Harshaw ; and upon a sale of it, by order of the court, it did not produce enough money to satisfy the prior attachments; and there was nothing left, applicable to the plaintiff’s demand ; yet the plaintiff proceeded afterwards in his suit, and took judgment, and then brought an action of debt on it in this state. It was adjudged against the plaintiff upon
 
 nul tiel record,
 
 upon the ground that there could be no judgment
 
 against the defendant,
 
 as
 
 he
 
 was not a party to the proceeding. Indeed, it is probable that the proviso to the thirtieth section of the act, which forbids judicial process, (including, of course, final process, as well as that issued pending the suit,) to be issued, unless grounded on an original attachment, or unless the leading process be executed on the defendant when in the state, has this point in its purview. It is clearly intended that there should be service of the writ, on the person or the property; and therefore we think the judgment null, unless the record shows service, either of the one kind or the other, or an appearance.
 

 We are, however, further of opinion, that evidence
 
 dehors
 
 the record, is inadmissible to establish, as a fact,
 
 *152
 
 that the estate attached was not the property of the defendant. Such evidence is not relevant to the only issue that can be joined in an action on the judgment, namely,
 
 nul tiel record.
 
 If addressed to the jury, it would contradict the record, when that shows that the court had found and condemned the thing, as the property of the defendant; which interlocutory judgment is as much between the parties, and as conclusive, while it stands, as that finally rendered for the debt. The service on the property, as stated in the record, stands on the same ground as appearance or personal service of process, therein appearing, against which no averment can be made collaterally. A mistake of the court in either respect, is error of judgment, as to the fact or the law; and like other errors of a like kind, it must be investigated and corrected, directly, and not incidentally. If the record show that there was a distress of a particular thing, and that it was not the property of the defendant, or was legally applied to satisfy other persons, so that no part thereof could be, or was condemned to the use of the plaintiff, or that the garnishee declared that he had no estate of the defendant, and was not indebted to him, and yet the court thereupon should give a judgment against the defendant, it would be void, because there was nothing before the court on which it could act. It has been contended that such is the case before us. The garnishee declared, at August Term, 1829, that he was indebted to Creecy in the sum of two hundred and twelve dollars; and at the next term, the court condemned that sum to answer the plaintiff’s recovery. In a subsequent part of the garnishment, it is stated, that the debt was due by bond or note, not payable to Creecy, but to another person, and it is expressly left uncertain whether it had been endorsed to him or not, and whether or not'it had been endorsed by him ; though it appears that he was the holder of the note, and claimed it, and had promised to pass it to the plaintiff, in part of his debt. Upon this state of facts, several objections have been taken by the defendant.
 

 It is first said, that supposing the note to have been ássigned tq Creecy, it is a negotiable instrument, and for
 
 *153
 
 that reason, the debt is not the subject of attachment, and therefore Creecy was not in court. Attachments, upon their face, run against “ the estate” of the defendant; but the twentieth section of the act provides, that they may be served in the hands of a person supposed to be “
 
 indebted”
 
 to the defendant, and that such person shall declare on oath, what he or any other person, to his knowledge, is indebted; and this, by the act of 1794,
 
 (Rev. c.
 
 424,) is extended to debts payable at a future day; and the court, upon the appearance and examination of the garnishee, is required to enter up judgment, and award execution against him, “ for
 
 all sums of money
 
 due to the defendant from him.” These terms embrace every debt, whether due by bond or otherwise; and in practice, those due upon negotiable securities have been attached as well as others. If the instrument was assigned before process of attachment sued, and the garnishee, in ignorance of it, confess the debt in his garnishment, what is to be the effect as between the garnishee and the assignee, has not, we believe, been as yet decided; nor, in case the assignee’s right is to be preferred, whether the garnishee and the defendant, or either of them, may not, by some legal proceeding, and what, put the fact of the previous assignment on the record, so as to protect the garnishee from a double payment, and reverse the judgment against the defendant, by reason that none of his effects, were, in truth, distrained. We give no opinion upon those questions, because they do not concern the present case. Here no assignment by Creecy appears in the record; and if the note had been endorsed to him, the debt, legally as well as equitably, belonged to him, and was therefore the subject of attachment.
 

 Negotiable securities may be attached as “ money due to the defendant” in the attachment.
 

 It is next said, that no endorsement to Creecy appears, and therefore he could have no
 
 legal
 
 interest, which alone is liable to attachment. It might, perhaps, be a sufficient answer to this, to say, that every thing consistent with the' express declarations in other parts of the garnishment, is to be presumed, to support the judgment, on the distinct acknowledgment in the beginning of it, of a debt from the garnishee to Creecy; and therefore, although the note may
 
 *154
 
 not have been endorsed, that the garnishee had expressly promised Creecy to pay him, as the holder and equitable owner of the note — especially as it appears, that the note, and the payment of it, had been the subject of arrangement between them. But a clear answer to it, as an objection in this cause, consists, as we suppose, in the judgment of condemnation in the record; which operates like other judgments, until it shall be reversed at the instance of Creecy, or the garnishee.
 

 The same is likewise true of the other objection, that the debt attached was entered as a credit on the note sued on. It has this memorandum at the foot of it>
 
 “
 
 Jo. C. Skinner’s note to be deducted;” and the garnishee deposed that Creecy promised him that he would pass his note to the plaintiff. The court nevertheless condemned the debt as the property of Creecy; and that judgment remains in full force — which compels us to regard it in like manner. We may, however, observe upon this part of the case, that nothing appears that induces us to think the judgment erroneous. The memorandum does not identify the debt, and is not in the nature of a credit or entry of payment which would have specified the sum. It is rather evidence of an executory agreement or Understanding, that the creditor should or would take J. C. S’s. note in part payment.
 

 Having thus disposed of the principal objections, it seems scarcely necessary to go through the others particularly. The third, fifth, and sixth exceptions were given up, as not amounting to error or irregularity. The defects in the affidavit could at most, be error only ; and perhaps not that, since the totalswant of the affidavit is matter of abatement by the 26th section of the act. That the judgment is for a larger sum than the debt sworn to, and mentioned in the attachment, is error for the excess only.
 
 Dowd
 
 v.
 
 Seawell,
 
 3 Dev. Rep. 185.
 

 But it has been further contended, and of that opinion was his Honor, that, although a stranger purchasing at the sale might not be, yet the plaintiff in attachment is •affected by any irregularity in suing out the writ, or in any of the subsequent proceedings; and that the court
 
 *155
 
 may look into them to see if they have been according to law. We think this is a misapplication of a doctrine which is sound in itself, when properly understood. It is true that the party is responsible for suing out
 
 irregular process,
 
 whether mesne or final; that being the act of the party himself. If a plaintiff sue out a
 
 capias ad respon-dendum
 
 not returnable to the next succeeding term, it is irregular and void, because the defendant may thereupon be imprisoned a long time before he can make his defence. In such a case, trespass will lie.
 
 Parsons
 
 v.
 
 Loyd,
 
 3 Wils. 341. But it does not follow that a judgment for the demand claimed in the writ is also void, and that the plaintiff could not purchase at a sale made by the sheriff under it. The contrary is the.law. The judgment is the act of the court and not of the party; and is a sufficient authority for what is regularly — that is, according to the course of the court — done under it. It maybe, that here Creeey was entitled to his action against the plaintiff, and also against the justice of the peace, for issuing the writ and attaching his property in a county in which he had never lived, and that for the same reason, the judgment of the court is erroneous. Yet it cannot be deemed void, unless every erroneous judgment is to be thus treated. So too, the plaintiff is liable to the action of the defendant for suing out an execution not warranted by the judgment; as a
 
 ca. sa.
 
 on a judgment against an executor
 
 de bonis testato-ris. Baker
 
 v.
 
 Braham,
 
 3 Wils. 368. Or a
 
 fi. fa.
 
 for a larger sum than that for which the judgment was rendered.
 
 Coltraine
 
 v.
 
 M‘Cain,
 
 3 Dev. Rep. 308. And if execution issue after a year and a day, the plaintiff cannot acquire a title, though a stranger may, and the sheriff be justified.
 
 Oxley
 
 v.
 
 Mizle,
 
 3 Murph. 250.
 
 Weaver
 
 v.
 
 Cryer,
 
 1 Dev. Rep. 337. But here is no irregularity in the execution. The judgment warranted it, if the judgment itself was not void. Now, it is likewise true that an irregular judgment does not justify the plaintiff in any of the acts done under it, provided it be set aside, although it does the officer; and a stranger gets a good title even if it be set aside.
 
 Turner
 
 v.
 
 Felgate,
 
 1 Lev. 95.
 
 Barker
 
 v.
 
 Nonwood,
 
 3 Wils. 376. It is the same as to the party,
 
 *156
 
 when set aside as if it had never been. Phillips v. Biron, 1 Str. 509.
 
 Bender
 
 v.
 
 Askew,
 
 3 Dev. Rep. 149.
 
 Phillips
 
 v.
 
 Biron,
 
 But it remains be ascertained, what is an irregular judgment, jn the sense we are speaking of. It is not irregular, because it is erroneous. Error does not constitute irregularity; nor does it necessarily enter into it: an
 
 irregular
 
 is one entered contrary to the course, the practice of the court; as out of term time; by default, before the proper period of the term ; or without service of the process; upon a forged or extorted warrant of attorney; or the like. If it appear upon the record entirely free from error, yet the court by which it purports to have been pronounced, may set it aside for the
 
 irregularity;
 
 but no other court can, unless in an appellate capacity.
 
 Bender
 
 v.
 
 Askew, Reed
 
 v.
 
 Kelly,
 
 1 Dev. Rep. 313, and the cases there cited. This doctrine has therefore no application to this case, unless judgments in attachments are of a different nature, or stand upon a different ground from those in other suits. We have already shown, that when the suit is well constituted by distraining property or summon'ng a garnishee, the judgment is, in our law, precisely the same as if the process had been personally served. It may be reversed for errors which would not have been sufficient if the party had appeared, or perhaps, if the process had been served on the person. But as the judgment is the same in each case, that in attachment, until it be reversed, has the same operation the other has. It can be questioned at law only by writ of error; and other relief can be had only by invoking the aid of that tribunal in which unjust judgments obtained by surprise j j o and without the opportunity of defence at law are relieved against.
 

 
 *155
 
 An irregu-. lar judg-' ment does not justify the plaintiff in any of the acts done under it, provided it be set aside, although it does the officer; and a stranger gets a good title, even if it be set aside. It
 
 *156
 
 as tcrthe™16 party when never been. A judgment is not irregular, because it is erroneous. Error does not constitute irregularity, nor does it necessarily enter into it. An
 
 irregular judgment
 
 is one entered concourse,”the3 the comt°f as out of’ term time, &c. If it appear upon the record entirely free from error, yet the court by which it purports to have been pronounced • may set it aside for the
 
 irregularity ;
 
 but no other court can, unless in appéllate capacity.
 

 The judgment of the Superior Court must be reversed, and the parties go to trial before another jury.
 

 Per Curiam. Judgment reversed.