J. B. SUMNER and WIFE v. W. J. SESSOMS et als.

*Judicial Sale—Impeaching decree Collaterally—Fraud—*
*Evidence—Guardian ad litem—Record—Infant.*

1. Where a sale of land is made under a decree of Court, it cannot be collaterally impeached in an independent action brought to recover the land. As long as the decretal order of sale and conveyance remain unmodified, the conveyance authorized by it must also stand, and such orders can only be impeached by a direct proceeding for that purpose.

2. Where land was sold to make assets, and the sale confirmed and title ordered to be made, and afterwards an action of ejectment was brought by one of the heirs, evidence in such action, that the land sold for an undervalue, is incompetent, the order confirming the sale being still in force.

3. In such case, the insufficiency in price would be cause for refusing to confirm the sale, but is no ground for annulling the deed in an action brought to try the legal title.

4. The fact that the purchaser at a sale of land to make assets, conveys the land to the administrator who made the sale, shortly thereafter, is very slight evidence, unless aided by other facts, to establish collusion between such purchaser and the administrator.

5. Where the person making a sale of land, purchases himself directly, the sale is void. But if he purchases through an agent, who afterwards conveys to him, the legal title passes, subject to the right of the parties interested, to divest it by a proper proceeding.

6. Where the record shows that a guardian *ad litem* was appointed, but it does not appear affirmatively that the infant was ever served, the defect must be taken advantage of in a direct proceeding to attack the judgment, and is not available in a collateral action.

7. The presence of a next friend or guardian *ad litem* to represent an infant, and his recognition by the Court, precludes inquiry as to his authority to act in a collateral proceeding.

8. Where it appears from the record that a person was a party to an action, when in fact he was not, the legal presumption that he was a party is conclusive, until removed by a correction of the record itself, by a direct proceeding for that purpose.

(*Patton* v. *Thompson*, 2 Jones Eq., 285 ; *Simmons* v. *Hassell*, 68 N. C., 213 ; *Froneberger* v. *Lewis*, 79 N. C., 426 ; *Hare* v. *Holloman*, at this Term ; *White* v. *Albertson*, 3 Dev., 241 ; *Skinner* v. *Moore*, 2 Dev. & Bat., 138 ; *Keaton* v. *Banks*, 10 Ired., 384 ; *Doyle* v. *Brown*, 72 N. C., 393, cited and approved).

CIVIL ACTION, tried before *Avery, Judge,* and a jury, at January Special Term, 1884, of the Superior Court of BERTIE county.

Reddin Jones died intestate many years since, seized and pos-
sessed of a large tract of land in Bertie county, which descended
in equal parts to his daughters, Fannie, wife of Calvin Godwin,.
Lavinia, wife of Henry D. Godwin, and his son Andrew J..
Jones.

The lands were subsequently divided among the co-tenants,.
under proceedings instituted for that purpose in the County
Court, and their respective shares allotted in severalty to each.
In the partition, lot number 1, which is described in the com-
plaint, and is claimed in the action by the *feme* plaintiff, was
assigned to the said Andrew J. Jones, her father, whose estate
therein, at his death in 1863, descended to her, his only heir-at-
law. The plaintiff Bettie J., during her minority, intermarried
with the other plaintiff, J. B. Sumner.

In December, 1870, Calvin Godwin, to whom letters of admin-
istration *de bonis non* on the estate of the intestate Reddin Jones,
had been granted, filed his petition against said Fannie, Lavinia,
Bettie J., Lawrence Askew, administrator of A. J. Jones, Lavi-
nia his surviving wife, and Celia Jones, widow of the intestate
Reddin, praying for license to sell his lands for assets, in order to
pay a large outstanding indebtedness, found to exist against the
estate. The Clerk thereupon made an entry in these terms :

"Henry D. Godwin is appointed guardian *ad litem* to the
infant defendants." The license and order of sale were granted,
and to be made " for cash or on six months credit, as the peti-
tioner might deem best for the estate."

The sale was made and reported, and thereupon a decree was
entered as follows :

" In this case, it appearing to the satisfaction of the Court,
that the land prayed for sale by Calvin Godwin, administrator
*de bonis non* of Reddin Jones, was duly advertised according to
law, and was sold in the town of Windsor, at public sale, on the
10th day of January, 1871 ; said land brought a fair price, and
all parties acquiesced in the sale, and said land was bid off by
Henry D. Godwin, for Celia Jones, widow of Reddin Jones,.

and is set down to her, the said Celia Jones, at the sum of seven hundred and fifty dollars :

"It is therefore, ordered and adjudged, that Calvin Godwin administrator *de bonis non* of Reddin Jones, be authorized to make and convey title to said land, by executing and delivering a deed of conveyance therefor to the said Celia Jones, the real and *bona fide* purchaser."

Besides the recitals in the decree, the report on which it is founded, contained a statement that the land was sold subject to the widow's dower—that the purchase money had been paid to the administrator, and that he had executed a deed for the premises to her.

This deed bears date February 25th, 1871, and on the 2nd day of April, thereafter, the said Celia conveyed the land to said Calvin Godwin, for the alleged consideration of seven hundred and fifty dollars.

No complaint is made of the proceeding instituted to convert the land into assets for the payment of debts, by the other heirs-at-law of the intestate Reddin, and the present action is brought to recover the land assigned to the *feme* plaintiff's 'ancestor, in the partition among the co-tenants, upon an allegation that the proceeding, as to him and her, is void, and did not divest the estate therein, and the relief demanded is the recovery of possession, and an adjudication of the invalidity of the deeds from the administrator to the purchaser, and from her to him.

This summary recital of the facts in evidence upon the trial of the contested issue as to title, is sufficient for an understanding of the pertinency and force of the exceptions brought up for examination by the plaintiffs' appeal.

*Mr. R. B. Peebles*, for the plaintiffs.
*Mr. W. D. Pruden*, for the defendants.

SMITH, C. J., (after stating the facts). 1 Exception. The plaintiffs proposed to show that the land was worth much more

than the sum for which it sold at the administrator's sale, with the view of impeaching the deeds referred to, and setting them aside.

This objection was made, on the ground that the parties to those deeds were not before the Court, and also because their validity could not be collaterally assailed, as proposed in this action. The objection was sustained, and the testimony for such purpose refused.

We concur in this ruling, and for the reason last assigned for the exclusion of the evidence. So long as the decretal orders of sale and conveyance remain unmodified, the conveyance authorized must also stand, unless impeached themselves in some direct proceeding, imputing collusion or fraud.

The insufficiency of price would have furnished cause for refusing to confirm the reported sale, but not after an adjudication that the "*land brought a fair price, and all parties acquiesced in the sale,*" for setting the sale aside, and annulling the deed therefor in an action to establish a legal title, as if they did not exist.

Nor was it competent, in connection with the fact that Celia Jones, the reputed purchaser, a little more than a month afterwards, made a conveyance of the land to the administrator, Calvin, at a small reduction in price. If the nullity of the purchase could be proved in this collateral proceeding, the evidence would have been competent to be heard, as tending to show collusion in the sale, in connection with other facts, but without their support, it would have been of the feeblest kind. For how does the sale and resale a month later, tend, with any convincing force, to establish the fact that the conveyances are the developments of a preconcerted arrangement among the three persons participating in the transaction, to secure the property to the administrator making the sale. And if such collusion did exist and could be shown, the deeds would not be rendered void at law, and the legal title would nevertheless pass, subject to the right of the owner, and of creditors, to repudiate them, and to charge the administrator with an attaching trust. The intervening agency would give the conveyances the forms of law, and he

might·be held to abide by the consequences of his own act, unrepudiated by those on whom alone devolved the right to make the election.   It would be otherwise but for such agency, for as there must be two independant parties to a contract, he could make none with himself; and as there could be no sale, there could be no deed, and the bidding off would, in such case, be a nullity.

Such is not the legal result when 'an intermediate person receives and then reconveys the legal estate.

"It is an inflexible rule,', remarks PEARSON, J., in *Patton* v. *Thompson,* 2 Jones's Eq., 285, "that when a trustee buys at his own sale, even though he gives a fair price, the *cestui que trust has his election* to treat the sale as a nullity, not because *there is,* but because *there may be fraud."*

"His Honor was mistaken," is the language used by BOYDEN, J., in *Simmons* v. *Hassell,* 68 N. C., 213, "in holding that the sale of the Clerk and Master could be attacked in this collateral way.   This is an action of ejectment, under our old system, brought to try the *legal title,* and not *any equitable claim* to the premises.   The deed of the Clerk and Master passed the legal title to the purchaser, and this title can only be attacked by some proceeding in the nature of a bill in equity, and not by an action of ejectment."

So, in the recent case of *Froneberger* v. *Lewis,* 79 N. C., 426, where in the opinion the subject is carefully considered, and the previous adjudications examined, READE, J., thus speaks: "That a trustee or other fiduciary cannot purchase at his own sale, is an iron rule *at law,* nor indeed can any one else, because in every sale there must of necessity be two persons—a vendor and a vendee.   It is equally true, that when there are two persons, a vendor and a vendee, as when a second person is substituted to *sell or buy, the sale is valid at law,* but in equity the substitution of a second person makes no difference, the validity or invalidity of the sale being determined by other consideration."

II Exception. The plaintiff also insists that the *feme* plaintiff was no party to the proceeding to make sale of the intestate's land, and such sale did not divest her estate in the land claimed in the complaint.

The proposition involved in this objection, has been considered in *Hare* v. *Holloman*, decided at the present Term, rendering little more necessary to be said on the subject in addition.

The only complaint of the action of the Court in licensing the sale and directing title to be made pursuant to its terms, proceeds from the plaintiffs, while the other heirs are passive and acquiesce in what was done. A guardian *ad litem* was appointed for the infant defendant, whose acceptance and presence in Court must be assumed, in the absence of any indication in the record to the contrary, from the fact that the Court took jurisdiction of the cause and rendered judgment. It is true the record produced does not show that notice was served on the infant, or upon her guardian *ad litem,* nor does the contrary appear in the record, which, so far as we have it, is silent on the point. The jurisdiction is presumed to have been acquired by the exercise of it, and if not, the judgment must stand, and cannot be treated as a nullity, until so declared in some impeaching proceeding, instituted and directed to that end.

The irregularity, if such there be, may, in this mode, be such as to warrant a judgment declaring it null, but it remains in force till this is done. The voluntary appearance of counsel in a cause, dispenses with the service of process upon his adult client. The presence of a next friend or guardian *ad litem* to represent an infant party, as the case may be, and his recognition by the Court, in proceeding with the cause, precludes an inquiry into his authority in a collateral proceeding, and requires remedial relief to be sought in the manner suggested, wherein the true facts may be ascertained. This method of procedure, so essential to the security of titles dependent upon a trust in the integrity and force of judicial action, taken in the sphere of its jurisdiction, is recognized in *White* v. *Albertson,* 3 Dev., 241 ;

*Skinner* v. *Moore,* 2 D. & B., 138 ; *Keaton* v. *Banks,* 10 Ired., 384, and numerous other cases, some of which are referred to in *Hare* v. *Holloman, supra,* all of which recognize the imputed errors and imperfections as affecting the regularity, and not the efficacy of the judicial action taken.

III Exception. The plaintiffs demanded an instruction to be given to the jury, to the effect that the proceeding under which the land was sold, was, for matter appearing upon its face, void, and the title being thus left in the *feme* plaintiff, the finding upon the first issue should be in the affirmative.

This was refused, and instead the jury were charged, that the judgment, and sale authorized by it, could not be treated as a nullity, but must be deemed valid, until impeached by direct action. In this ruling, for reasons already stated, we find no error.

The proceeding, as shown by the disarranged and fragmentary parts produced at the trial, was instituted and conducted with great carelessness, and little regard to form, for which no excuse is offered, nor perhaps can be, but it is a sound and salutary rule, from which the Court could not depart, without hazarding the gravest consequences to the security of titles to property, that requires the correction of a wrongful judgment of a Court, invested with full jurisdiction over the subject, to be made by some action having direct reference to this object, and leaves it in full force until this is done.

In *Doyle* v. *Brown,* 72 N. C., 393, it is decided, that when the record shows one to be a plaintiff or a defendant, when in fact he was not, the legal presumption that he is properly present in the action, cannot be repelled, but is conclusive, until removed by a correction of the record itself, by a direct proceeding for that purpose.

In recognition of this principle, we sustain the ruling of the Court and affirm the judgment.

No error.                                  Affirmed.