JAMES ADAMS, Adm'r, v. HENRY HOWARD et al.

*Administration—Sale of Land for Assets—Amendments— Setting Aside Sales.*

An administrator in 1860 filed a petition to sell lands for assets; the heirs of the intestate were made parties, the infants being represented by guardian *ad litem;* license was granted to sell subject to widow's dower, and the land not covered by dower was sold, report made and sale confirmed. In 1866, without further orders or notice— the guardian *ad litem* having died—the administrator sold the reversion in the land covered by the dower, the heirs at law being present, but the record did not show any report or confirmation. The proceeding had never been transferred to the Superior Court; but in 1882 the purchaser filed a petition stating the facts and asking an order amending the record *nunc pro tunc,* and for confirmation, which was granted. The heirs were not parties to this petition. It appeared that the sale and purchase were in good faith, and the proceeds properly applied in the administration. In 1891 the heirs made a motion to set aside the sale: *Held—*

1. That the sale in 1866 was authorized by the license of 1860.

2. That while there was irregularity in the failure to report and confirm the sale of the reversion, and the heirs at law should have been made parties to the proceeding to amend and confirm in 1882, yet the Court, under the circumstances, did not commit error in refusing to set aside the sale.

MOTION to set aside sale of lands, heard upon appeal from Clerk, by *Whitaker, J.,* at October Term, 1891, of WAKE Superior Court.

It appears that David Smith died in the county of Wake about October of 1860, and James Adams was appointed and qualified as administrator of his estate; that at November Term, 1860, of the late Court of Pleas and Quarter Sessions of said county, the said administrator filed his petition against the heirs at law of his intestate to obtain a license to sell all the intestate's real estate, subject to his widow's dower, to make assets to pay debts. Four of these heirs were then above the age of twenty-one years; several others were infants of tender years, and the Clerk of the Court was appointed guardian *ad litem* for them. The adult heirs accepted service of the petition and the Clerk, as guardian, accepted service thereof for his wards. The prayer of the petitioner was allowed; the administrator sold the land, except the reversion of the dower land, reported the sale, and the same was confirmed, the purchase-money afterwards paid, and the administrator directed to make title to the purchaser, which he did.

In 1866 the administrator, not having sold the reversion in the land allotted to the widow for her dower, without further order sold the same after due advertisement, and Rufus Smith, one of the heirs, purchased the same in good faith for the fair price of two hundred dollars and paid the same. There was no report of this sale to the Court, so far as appears of record, and there was no service of notice of the same on the defendants—the guardian of the infants was then dead. After such sale Rufus Smith sold and assigned his bid to Moses C. Utley in good faith and for a fair price.

The proceeding in the Court of Pleas and Quarter Sessions was never formally transferred to the Superior Court, as allowed by the statute (*The Code,* § 944), but on the 3rd of October, 1882, the said Moses C. Utley, assignee of the said

Rufus Smith, filed his petition in the Superior Court of said county, before the Clerk thereof, stating substantially the facts above stated; that the said sale of 1866 was, in fact, reported and confirmed by the Court, and praying that the proceeding in the Court of Pleas and Quarter Sessions be transferred to the Superior Court; that the record be amended *nunc pro tunc* as to the report of the last mentioned sale and the confirmation thereof, and that the administrator be directed to make title to him, etc. The Clerk having heard evidence and found the facts, allowed the motion to amend, etc.

The defendants, except Rufus Smith, moved as heirs at law, before the Clerk of the Superior Court on the 16th of April, 1891, to vacate and set aside the last mentioned order of the Clerk. The said Moses C. Utley resisted this motion, and made a counter-motion that the record as to the said sale made by the administrator in 1866 be amended, if need be, etc. The Clerk heard divers affidavits on both sides, found the facts and made his order thereon as follows:

" In consideration of the foregoing facts which are found by the Court from the inspection of the record and the affidavits filed in the cause, it is adjudged that the motion to vacate and set aside the order made by Chas. D. Upchurch, Clerk, on October 3rd, 1882, be not allowed, and that the proceeding for that purpose, instituted by defendants, be dismissed, and the costs of the same be taxed against them."

The defendants appealed to the Judge, who in term-time approved the findings of fact by the Clerk and affirmed his judgment. The defendants, except Rufus Smith, excepted and appealed to this Court.

*Messrs. R. H. Battle* and *S. F. Mordecai,* for plaintiff.
*Messrs. J. B. Batchelor* and *S. G. Ryan,* for defendants.

MERRIMON, C. J.: According to the pertinent statutes and practice prevailing at the time the plaintiff filed his petition
110—2

to obtain a license to sell all the land of his intestate to make
assets to pay debts, the late Court of Pleas and Quarter Ses-
sions had complete jurisdiction of the parties, including the
infant defendants, and of the subject-matter of the petition.
The petition alleged that a sale of all the land of the intes-
tate was necessary, and the Court granted the prayer thereof,
and directed a sale of the whole of the land specified therein
except the "widow's dower." The administrator at once duly
sold this land, except the reversion of that part so allotted
to the widow. As to that sale, no question is made.

Afterwards, in 1866, the administrator, acting upon the
same grant of license, sold the said reversion in good faith
and for a fair price, one of the heirs, and a defendant, being
the purchaser. That sale was duly advertised, but no special
notice of it was given to the present appellants, though they
were in fact present at the sale; nor was any fresh license
granted.

A fresh license was not necessary — that first granted
authorized the sale. It is insisted, however, that the sale of
the reversion was never reported to the Court and confirmed,
and, therefore, there was a fatal irregularity. We think
there was irregularity, but it ought not to be treated as fatal
in this case. The statute (*The Code*, § 944), the provisions
of which were in force during and before the year 1882,
authorized the transfer of the proceedings in the Court of
Pleas and Quarter Sessions to the Superior Court for proper
purposes. It does not appear affirmatively that it was so
transferred, but the appellee filed his petition in the Supe-
rior Court in the year 1882 praying the Court to so transfer
the same, alleging and suggesting that the matter of the
petition had not been completed, that the sale of the rever-
sion in 1866 had been made, reported to and confirmed by
the Court, and no proper entry of the same had been made;
and asking that the record be amended *nunc pro tunc* so as
to show the same, and that the administrator be directed to

make title to the land to him. The Court (the Clerk) allowed the motion. It clearly treated the matter of the petition as transferred. It was identified by the appellee's petition and the order of the Court—these had direct reference to it and, for the purposes intended, was in effect transferred and must be so treated. If this were not so, it might yet be transferred for proper purposes. The matter of the petition was of the nature of a special proceeding under the present method of civil procedure, as to which the Clerk might act as and for the Court in making the order of transfer, and making appropriate orders in and about the same, as in other cases out of term-time. *The Code*, §§ 132, 944.

Notwithstanding the long lapse of time, the Court might in a proper case allow such amendment to be made *nunc pro tunc*, but regularly it should be done only upon notice to parties to the proceeding or action. It is irregular to hear and act upon such applications without such notice, and, ordinarily, an order making such amendments of importance will be set aside. We think, however, the Court ought not to disturb the order in question, or at all interfere in the matter of the petition. As we have seen, the Court had jurisdiction of the parties and the subject-matter. The property was sold for a fair price. The appellants were present at the sale, and though some of them were infants, several of them were of age, and all had a common interest as heirs of the intestate. Those of age had motives to object to irregularities and to resist and prevent any fraudulent practice. The proceeds of the sale were applied regularly in the administration of the estate of the intestate. It is not alleged or suggested that there was fraud on the part of the administrator or any other person in the sale of the property, or the application of the proceeds of the sale. The administration was closed and the appellants (most if not all of them) received respectively his or her small share of the assets remaining to be distributed to the next of kin. The administrator has

died. After the lapse of twenty years, the appellants ask to set the sale aside for irregularities, without showing that they have been at all prejudiced by them, or at all.

It was earnestly suggested on the argument that the appellants might have shown that a note or claim against the estate was not due, was barred by the statute of limitations, or had been paid. They might have had ample remedy against the administrator in that case in the final settlement of the estate; and besides, if a sale of the real property was unnecessary, in whole or in part, this should have been shown at the time the license to sell the same was granted. Moreover, the appellants should have taken advantage of irregularities in apt time—within a reasonable time. Some of them, it is true, were infants, but their co-heirs, brothers and sisters, interested like them, might have objected to irregularities years before they did. The motion is without merit, and the Court properly denied it.

Affirmed.