Action to recover a one-seventh interest in the land described in the complaint. The tract of land originally belonged to Daniel Glisson, who died in April, 1880, leaving a will, in which a (202) one-seventh interest in the said land was devised to the feme plaintiff. Mary Glisson, the widow of Daniel Glisson, qualified as his administratrix with the will annexed, and on 2 November, 1881, instituted proceedings against the heirs and devisees of the testator for the sale of his lands for assets. Some of the defendants were personally served with process. It does not appear, except inferentially, that the plaintiff, who was Catherine Glisson, now Catherine Rackley, was personally served, but John L. Tew was appointed guardian ad litem of the said Catherine Glisson and other infants, and a summons was duly served upon him. In her petition the administratrix prayed that a summons, with a copy of the petition, be issued to each of the defendants. An answer was filed, as follows: "Mary Glisson, administratrix of Daniel Glisson, plaintiff, v. H. J. Glisson and others, defendants. John L. Tew, guardianad litem for Robert, Ann Glisson, and others, answering the *Page 150 
complaint, says: (1) That according to their best information and belief, the first allegation is not true, etc. (2) They deny the second allegation, etc. Whereupon the defendants pray that the proceeding be transferred to the Superior Court at term, in order that the issues of fact may be investigated and that they may obtain such other and further relief as may seem just and according to law. (Name of attorney), attorney for defendants above mentioned."
The answer avers fraud and collusion and resists a sale upon the ground that it is not necessary. It is then stated in the record that, "by consent of all parties," a reference was ordered to B. Witherington to take and state an account of the debts of Daniel Glisson, deceased, and then to ascertain the value of the personal property and report to the court. The referee filed his report, and upon it and the pleadings the clerk ordered that a sale of the land be made by the administratrix. At the sale F. M. Roberts, wife of J. B. Roberts, purchased the land (203) for the sum of $1,450, and a deed was executed by the administratrix of her, 16 February, 1883. It was admitted that the purchaser has ever since been in possession of the land, receiving the rents and profits, except the part covered by the dower, and she has been in possession of that part since 1890. The defendants moved to nonsuit the plaintiff. The motion was overruled, and the defendants excepted. The issues, with the answers thereto, were as follows:
1. Was the plaintiff, Mrs. Kate Rackley, served with summons in the proceeding to sell the lands of Daniel Glisson for assets? Answer: "No."
2. When was the plaintiff, Mrs. Kate Rackley, born? Answer: "May, 1862."
3. Was the plaintiff married before the above proceedings were commenced? Answer: "Yes."
4. Is the plaintiff the owner of the lands described in the complaint, or any part thereof or interest therein? Answer: "Yes; undivided one-seventh interest, subject to the defendants' interest, which was heretofore adjusted."
5. Do the defendants wrongfully withhold the possession of said lands or any part thereof from the plaintiff, and if so, what part or interest? Answer: "Yes; one-seventh undivided interest, subject to defendants' equity, to be hereafter adjusted."
6. What is the annual rental value of said lands described in the complaint? Answer: "One hundred and twenty-five dollars."
It was agreed that the court should answer the fourth and fifth issues, as a matter of law, according to the finding of the jury upon the other issues. The defendants' counsel requested the court to give several instructions to the jury, but it is not necessary, in the view taken by the *Page 151 
Court of the case, to set out the prayers or the instructions given by the court. From the judgment the defendants appealed.
After stating the case: The question presented in the record is whether the validity of the special proceeding for the sale of the land can be attacked collaterally in a separate suit like this, where the ground of the attack is that process was not served upon the feme
plaintiff, who was a defendant in that proceeding and at the time a minor, and in whose behalf a guardian ad litem was regularly appointed and answered. It is true, the plaintiff alleges that the judgment in the special proceeding was obtained by fraud and collusion, but there does not seem to be any evidence of it, and no issue was submitted upon that allegation. So far as appears or is found by the jury, the defendant F. M. Roberts purchased for value and without notice of any irregularity in the proceeding. The jury by their verdict simply find that there was in fact no service of a summons upon the plaintiff, Mrs. Kate Rackley; that she was at the time a minor, and was married before the proceeding was commenced, and that the annual rental value of the land is $125. Upon these findings the court was of the opinion, as matter of law, that the plaintiff is the owner of a one-seventh interest in the land, and that the defendant wrongfully withholds the same from her, and directed the other two issues to be answered accordingly, the parties having agreed that he might answer them as he should rule upon the law. He thereupon adjudged that the plaintiff was entitled to recover the said one-seventh interest. We do not think the special proceeding could be assailed by an independent action for mere irregularity. The plaintiff should have proceeded by motion in the cause to set aside the judgment as to her. Grant v. Harrell, 109 N.C. 78; Carter v. Rountree,109 N.C. 29. Before the adoption of the reformed procedure, in 1868, a judgment in a proceeding to sell land for assets would not be set aside upon the application of a minor who had not been served with process, provided a guardian ad litem to defend his interests had (205) been duly appointed and there had been a real and bona fide
defense in his behalf. Hare v. Holloman, 94 N.C. 14, citing Matthewsv. Joyce, 85 N.C. 258, and other cases. See, also, Cates v. Pickett,97 N.C. 21; Sledge v. Elliott, 116 N.C. 712. It was held in Hare v.Holloman that where infant defendants are not served with process, but the record shows that a guardian ad litem was appointed for them, who proceeded in the cause and defended their interests the decree against the infants is not void and cannot be collaterally impeached. This was said, *Page 152 
of course, with reference to the practice prior to 1868. McGlawhorn v.Worthington, 98 N.C. 199; Brittain v. Mull, 99 N.C. 483; England v.Garner, 90 N.C. 197; Syme v. Trice, 96 N.C. 243; Coffin v. Cook,106 N.C. 376; Tyson v. Belcher, 102 N.C. 112; Turner v. Shuffler,108 N.C. 642. What is said in Carraway v. Lassiter, 139 N.C. at p. 154, had reference to the special facts of the several cases cited to support it. We will now refer to those cases. Moore v. Gidney, 75 N.C. 34, was a motion in the cause, and not an independent civil action. Gulley v.Macy, 81 N.C. 356, was a civil action, in which fraud was alleged and shown, and it was further established that the purchasers, who were defendants, had notice of the plaintiff's equitable rights. In Young v.Young, 91 N.C. 359, there was no attempt to attack a prior proceeding, but the court in the original cause refused to construe the deed in question and to declare the nature of the trusts because the parties had not been properly served with process. Stancill v. Gay, 92 N.C. 455 and 462, was a motion in the original cause. We may add, also, that what we said in Carraway, v. Lassiter, supra, was not intended to change the doctrine as to the rights of innocent purchasers at judicial sales or to impair those rights; but the case, when considered with reference to its own facts and the authorities cited, will clearly appear to be in perfect accord with our previous decisions and the ruling in the present case. In (206) considering the cases decided by this Court as to the validity of judicial sales, care should be taken to examine each case and to construe what is said by the Court with due regard to the special facts and the nature of the case itself, whether a motion in the original cause to vacate the judgment for irregularity or a separate civil action, and, in the former case, whether the rights of bona fide purchasers for value have intervened. An independent action will undoubtedly lie to set aside a judgment in a former proceeding or in a civil action upon the ground of fraud or when it involves some other equitable element, when relief can only be had in that way. Gulley v. Macy, supra, was such a case, and numerous others of a like character are to be found in our reports. The distinction is stated with clearness in Syme v. Trice, supra.
In our case fraud was alleged, but it was not established, nor was any issue submitted in regard to it. The verdict of the jury only ascertains that there was irregularity in the former proceeding. The jury did not even pass upon the rights of Mrs. Roberts as an innocent purchaser. The case, therefore, would seem to be governed by the decision of this Court inSumner v. Sessoms, 94 N.C. 376, in which Chief Justice Smith says: "The only complaint of the action of the court in licensing the sale and directing title to be made pursuant to its terms proceeds from the plaintiffs, while the other heirs are passive and acquiesce in what was done. A guardian ad litem was appointed for the infant defendant, whose *Page 153 
acceptance and presence in court must be assumed, in the absence of any indication in the record to the contrary, from the fact that the court took jurisdiction of the cause and rendered judgment. It is true, the record produced does not show that notice was served on the infant or upon her guardian ad litem, nor does the contrary appear in the record, which, so far as we have it, is silent on the point. The jurisdiction is presumed to have been acquired by the exercise of it, and, if not, the judgment must stand and cannot be treated as a nullity until so declared in (207) some impeaching proceeding instituted and directed to that end. The irregularity, if such there be, may in this mode be such as to warrant a judgment declaring it null, but it remains in force until this is done. The voluntary appearance of counsel in a cause dispenses with the service of process upon his adult client. The presence of a next friend or guardian ad litem to represent an infant party, as the case may be, and his recognition by the court in proceeding with the cause, preclude an inquiry into his authority in a collateral proceeding and require remedial relief to be sought in the manner suggested, wherein the true facts may be ascertained. This method of procedure, so essential to the security of titles dependent upon a trust in the integrity and force of judicial action, taken within the sphere of its jurisdiction, is recognized in White v. Alberson, 14 N.C. 241; Skinner v. Moore, 19 N.C. 138;Keaton v. Banks, 32 N.C. 384, and numerous other cases, some of which are referred to in Hare v. Holloman, supra, and all of which recognize the imputed errors and imperfections as affecting the regularity and not the efficacy of the judicial action taken." The proceeding assailed in that case was commenced in 1870. Carter v. Rountree, 109 N.C. 29.
In this case it appears that there was a general appearance by counsel for all the defendants and an answer filed, and when this is the case the judgment cannot be attacked collaterally, even if the attorney had no authority to act in that capacity. It can make no difference that some of the defendants were infants. White v. Morris, 107 N.C. 92; Turner v.Douglas, 72 N.C. 127.
While it may not be necessary to the decision of this appeal, as we view it, to consider what may be the rights of Mrs. Roberts as an innocent purchaser, for all the facts in regard to that question are not now before us, it may be well to refer again to the general doctrine settled by this Court, to the effect that when there is a purchase under an order or judgment, the purchaser need only inquire if upon the (208) face of the record the court apparently has jurisdiction of the parties and the subject-matter, in order to be protected, provided he buys in good faith and without notice of any actual defect. Morris v. Gentry,89 N.C. 248; England v. Garner, 90 N.C. 197; Syme v. Trice, supra;Adams v. Howard, 110 N.C. 15; Williams v. Johnson, 112 N.C. 424; *Page 154 Sledge v. Elliott, supra; Herbin v. Wagoner, 118 N.C. 656; Harrisonv. Hargrove, 120 N.C. 96; Morris v. House, 125 N.C. 550. In Suttonv. Schonwald, 86 N.C. 198, when discussing this subject, the Court says: "In such cases the law proceeds upon the ground as well of public policy as upon principles of equity. Purchasers should be able to rely upon the judgments and decrees of the courts of the country, and, though they know of their liability to be reversed, yet they have a right, so long as they stand, to presume that they have been rightly and regularly rendered, and they are not expected to take notice of the errors of the court or the laches of parties. A contrary doctrine would be fatal to judicial sales and the values of title derived under them, as no one would buy at prices at all approximating the true value of property if he supposed that his title might at some distant day be declared void because of some irregularity in the proceeding altogether unsuspected by him and of which lie had no opportunity to inform himself. Under the operation of this rule occasional instances of hardship (as this one of the present plaintiffs seems to be) may occur, but a different one would much more certainly result in mischievous consequences and the general sacrifice of property sold by order of the court. Hence it is that a purchaser who is no party to the proceeding is not bound to look beyond the decree if the facts necessary to give the court jurisdiction appear on the face of the proceedings. If the jurisdiction has been improvidently exercised, it is not to be corrected at his expense who had a right to rely upon the order of the court as an authority emanating from a competent source, (209) so much being due to the sanctity of judicial proceedings." The Court, in Herbin v. Wagoner, supra, thus refers to that case: "It was held accordingly that the purchaser's title was not rendered invalid by the reversal of the decree on account of the irregularity in the proceeding, of which the purchaser had no notice. In that case the defendant acted as guardian of two infants, being, however, guardian for only one, and sold the land of both under an order of the court, and the sale was upheld."
As the plaintiff in her complaint alleges fraud and collusion, and may be able to establish her charges at the next trial, and as defendants moved to nonsuit at the close of the plaintiff's evidence, but did not renew the motion at the close of all the evidence (Revisal, 539; Means v. R. R.,126 N.C. 424; McCall v. R. R., 129 N.C. 298), we will not dismiss the action, but award a new trial for error in the ruling of the court as indicated, and set aside the judgment upon the verdict.
New trial.
Cited: Rutherford v. Ray, post, 262; Hargrove v. Wilson, 148 N.C. 441;Bailey v. Hopkins, 152 N.C. 751; Barefoot v. Musselwhite, *Page 155 153 N.C. 211; Glisson v. Glisson, ib., 186; Phillips v. Denton,158 N.C. 302; Harris v. Bennett, 160 N.C. 344, 346;Cooke v. Cooke, 164 N.C. 287; Massie v. Hainey, 165 N.C. 178;Cox v. Boyden, 167 N.C. 321; Hassell v. Steamboat Co., 168 N.C. 298;Pinnell v. Burroughs, ib., 320; Johnson v. Whilden, 171 N.C. 155.