W. K. PHILLIPS ET AL. v. SHERROD DENTON ET AL.

(Filed 6 March, 1912.)

1. Executors and Administrators—Sale to Make Assets—Lost Papers—Entries of Records—Regularity of Proceedings—Evidence—Judgment—Collateral Attack.

When the original papers in proceedings by an administrator to sell lands of the deceased to pay debts have been lost, the regularity of the proceedings may be established by entries thereof on the minute docket of the court, and when therefrom it is made to appear that the parties were properly before the court, minors being represented by guardians *ad litem,* and in all other respects the proceedings were conducted according to the due course and practice of the courts, the judgment entered cannot be collaterally attacked.

2. Executors and Administrators—Sale to Make Assets—Lost Papers—Entries of Record—Regularity of Proceedings—Evidence Sufficient.

The validity of a deed made by an administrator in proceedings for the sale of lands to make assets to pay debts being in controversy, and it being shown that the original papers had been lost, the entries on the minute docket of the court *Held* sufficient to sustain the regularity of the proceedings, which show the appointment of the administrator, who gave a satisfactory bond, and qualified; his account of sale of the land, which was received and ordered recorded; his charging himself with the proceeds of sale of the land in his final account; that service was admitted of the petition to sell the lands, the prayer was granted and decree filed, and that the report of sale was returned and confirmed.

3. Deeds and Conveyances—Dower Excluded—Definite Description—Evidence Sufficient.

When it appears that the deceased owned but one tract of land, which the administrator sold and conveyed in proceedings to pay his debts, subject to dower, and the deed described the land as that from which the dower tract was taken, the allotment of the dower may be examined to ascertain the land intended to be conveyed; and it therein appearing that both the dower tract and the lands from which it was taken were described by metes and bounds, these descriptions are sufficient to admit of parol identification of the lands thereunder.

4. Executors and Administrators—Sale to Make Assets—Deeds and Conveyances—Recitation of Powers.

Where an administrator acts under an order to sell land to make assets to pay debts and in accordance therewith sells the lands and executes his deed to the purchaser, it is not necessary that he recite the order in the execution of his deed for the deed to be valid, for by implication power is conferred by the order.

APPEAL from *Ferguson, J.,* at October Term, 1911, of FRANKLIN.

This action was brought to recover a tract of land, which was originally owned by Sherrod Denton and was sold by John Chamblee, his administrator, under an order of court, to pay debts of the intestate. Plaintiffs having proved that the papers in the proceeding for the sale of the land, entitled John Chamblee, administrator, v. Heirs of Sherrod Denton, had been lost, introduced in evidence the entries in the case on the minutes of the court, as follows:

December Term, 1859: "John Chamblee is appointed administrator of Sherrod Denton and he enters into bond in the sum of $500, with James Baker and Henry Baker as sureties, which is accepted by the court, and he qualifies accordingly."

March Term, 1860: "John Chamblee makes his return of account of sale of Sherrod Denton, which is received by the court and ordered to be recorded."

In his final account, he charged himself with $131.25, proceeds of sale of land, 16 May, 1860.

March Term, 1860: "Petition to sell land to pay debts. Service admitted. Prayer granted and decree filed."

June Term, 1860: "Petition to sell land to pay debts. Prayer granted. Decree filed. Report of sale returned and confirmed."

They then introduced a deed from John Chamblee, administrator of Sherrod Denton, to T. H. Mann, reciting a consideration of $131.25, paid by Mann, and conveying to him a tract of land in said county containing, by estimate, 87½ acres, 30 of which had been allotted to Mary Denton, the widow of Sherrod Denton, as her dower. They next offered a deed from T. H. Mann to John Chamblee, executed six years after the first deed. The land in controversy is the part of the entire tract which was allotted as dower to Mary Denton, she having died before this suit was commenced. Plaintiffs then introduced the record of the dower proceedings, which showed that the petition was filed, a copy of petition issued, N. S. Patterson appointed guardian *ad litem* for infants, service admitted, prayer granted, writ of dower ordered to be issued, jury ordered, report returned and confirmed. The acceptance of service for the infant defendants by N. S. Patterson, their guardian, was also indorsed on the petition for the assignment of dower. A survey of the land was ordered in the dower proceedings, and the report of the surveyors showed that the tract contained 87 acres, which was described by metes and bounds, and the dower land, taken therefrom, contained 29 acres, also described by metes and bounds. The defendants agreed that if parol evidence was admissible to aid the description in the administrator's deed and locate the land, and the records sufficient to authorize a sale of the land to pay debts, the judge should charge the jury to answer the issue in favor of the plaintiffs, it being admitted that the deed

to Mann covered the *locus in quo.* The judge being of opinion with the plaintiffs upon the points reserved, instructed the jury to answer the issue accordingly, and judgment having been entered for the plaintiffs upon the verdict, the defendants appealed.

*W. M. Person and W. H. Yarborough, Jr., for plaintiffs.*
*Thomas B. Wilder and T. T. Hicks for defendant.*

WALKER, J., after stating the case: There is no suggestion of any fraud in this case, nor is it alleged that John Chamblee bought the land at his own sale through T. H. Mann, who acted for him. It appears that the proceeding to sell the land was brought against the widow, who is now dead, and the children of Sherrod Denton, who were then minors and represented by their guardian *ad litem.* There is enough, in the fragments of the record that remain, to indicate that the proceeding was conducted with regularity. The original papers have been lost, and we will not presume, in their absence, that the court disregarded the rules of procedure and gave its decree without properly guarding the rights of the defendants. It affirmatively appears that they were represented by a guardian, and the presumption is that the court proceeded in the case according to its usual course and practice. We cannot, in this suit, permit a collateral attack upon the judgment in that case.

The subject was fully considered by us in *Rackley v. Roberts,* 147 N. C., 201, and we do not see any substantial difference in the facts of the two cases. If there is any, it is in favor of the validity of the proceedings in *Chamblee v. Denton,* which the defendants now assail, for there is no allegation of fraud or collusion in the sale of the land, as there was in the case cited. In *Rackley v. Roberts, supra,* we relied much upon the authority of *Sumner v. Sessoms,* 94 N. C., 376, in which *Chief Justice Smith* thus stated the law governing such cases: "A guardian *ad litem* was appointed for the infant defendant, whose acceptance and presence in court must be assumed, in the absence of any indication in the record to the contrary, from the fact that the court took jurisdiction of the cause and rendered judgment. It is true, the record produced does not show that notice was

served on the infant or upon her guardian *ad litem,* nor does the contrary appear in the record, which, so far as we have it, is silent on the point. The jurisdiction is presumed to have been acquired by the exercise of it, and, if not, the judgment must stand and cannot be treated as a nullity until so declared in some impeaching proceeding instituted and directed to that end. The irregularity, if such there be, may in this mode be such as to warrant a judgment declaring it null; but it remains in force until this is done. The voluntary appearance of counsel in a cause dispenses with the service of process upon his adult client. The presence of a next friend or guardian *ad litem* to represent an infant party, as the case may be, and his recognition by the court in proceeding with the cause, preclude an inquiry into his authority in a collateral proceeding and require remedial relief to be sought in the manner suggested, wherein the true facts may be ascertained. This method of procedure, so essential to the security of titles dependent upon a trust in the integrity and force of judicial action, taken within the sphere of its jurisdiction, is recognized in *White v. Alberson,* 14 N. C., 241; *Skinner v. Moore,* 19 N. C., 138; *Keaton v. Banks,* 32 N. C., 384, and numerous other cases, some of which are referred to in *Hare v. Holloman, supra,* and all of which recognize the imputed errors and imperfections as affecting the regularity and not the afficacy of the judicial action taken." The proceeding alleged in that case to have been irregular was commenced in 1870, after the adoption of the new procedure. *Carter v. Rountree,* 109 N. C., 29.

We further said in *Rackley v. Roberts:* "While it may not be necessary to the decision of this appeal, as we view it, to consider what may be the rights of Mrs. Roberts as an innocent purchaser, for all the facts in regard to that question are not now before us, it may be well to refer again to the general doctrine settled by this Court, to the effect that, when there is a purchase under a judgment, the purchaser need only inquire if, upon the face of the record, the court apparently has jurisdiction of the parties and the subject-matter, in order to be protected, provided he buys in good faith and without notice of any actual defect," citing numerous cases. See *Glisson v. Glisson,*

153 N. C., 185, which was a motion to set aside the judgment
attacked in *Rackley v. Roberts.* The question is there fully dis-
cussed by *Justice Brown.* His Honor was correct in holding
that the proceeding in *Chamblee v. Denton* supported the judg-
ment in that case and the sale and deed made by the adminis-
trator. *Coffin v. Cook,* 106 N. C., 376.

The description in the deed from Chamblee to Mann was
sufficient. In the first place, so far as appears, the intestate of
John Chamblee owned but one tract of land, and it was his land
which was sold to pay his debts. In order to make a valid sale
of the whole of it, the allotment of the widow's dower was first
made and then the entire tract sold, subject to this dower. This
appears from the language of the deed. The description is of
the land from which the dower tract was taken, and this is
sufficient reference to the allotment of the dower to permit an
examination of it for the purpose of ascertaining what land
was intended to be conveyed. When we look into the record
of this allotment, we find that the entire tract is described by
its metes and bounds, and also the dower tract, and this makes
clear and definite the description in the deed. In other words,
it appears on the face of the deed that it was the purpose of
the parties to convey all the land of Sherrod Denton, except
the dower interest, or the life estate of the widow, in the land
set off to her in the larger tract, both being described in the
proceedings by metes and bounds. The tract conveyed by the
deed necessarily adjoined the dower land, the latter having been
a part of it. It would not be difficult to locate the land of
Sherrod Denton adjoining the dower tract, as he had only one
tract of land, even if we disregarded the additional description,
"adjoining the land of Rebecca Denton's old tract, and others,"
which increases the certainty of a true location. In the latter
view of the description, the ruling of the court is sustained by
*Perry v. Scott,* 109 N. C., 374.

The defendants further contend that the deed of Chamblee,
administrator, to Mann does not convey the land, because it
fails to recite the power under and by virtue of which it was
executed, or to refer to the order of the court directing a con-
veyance of the land to the purchaser. The same objection was

made to the executor's deed in *Cook v. Coffin, supra,* and held to be untenable. It was there said that where the executor actually exercised the power given by an order of the court in the execution of the deed, but failed to recite the order, the implication of the law is that he was acting under authority conferred by the order.

This disposes of all the exceptions which require any special attention.

No error.