DANIEL STARNES ET AL. V. L. A. THOMPSON ET AL.

(Filed 2 May, 1917.)

1. **Judgments—Presumptions—Inferior Courts—Clerks of Court—Probate.**

The presumption of the regularity of proceedings terminating in judgment in the Superior Court having jurisdiction of the parties and the subject-matter applies to courts of inferior or more limited jurisdiction, as, in this case, the action of the clerk of the Superior Court of the proper county admitting a will to probate in common form.

2. **Same—Burden of Proof.**

Where a party seeks to set aside the probate of a will as a cloud upon his title to lands, the burden of proof is upon him to show, in a proper suit, such substantial defects in the proceedings as would avoid the action of the clerk in admitting the will to probate.

3. **Judgments—Clerks of Court—Probate—Collateral Attack—New Counties.**

The action of the clerk of the Superior Court of the proper county admitting a will to probate cannot be attacked collaterally, in a suit brought to declare the probate void for irregularity, as a cloud upon the plaintiff's title to lands; and the fact that the lands, a part of a larger body, were situate and suit was brought within a new county cut off in part from the original one in which the probate was allowed, does not alter the application of the principle, there being *bona notabilia*, in the county. when the probate was had.

CIVIL ACTION tried before *Cline, J.,* at October Term, 1916, of UNION, on special appearance and motion by defendants to dismiss the action for want of jurisdiction of the court, and then on demurrer to the complaint, based upon the ground, first, that the court has no jurisdiction of the action, and, second, that there is no cause of action stated, as the plaintiffs cannot attack collaterally the probate of a will taken in the court of another county, where the testator resided and was domiciled at his death.

The action was brought to remove a cloud from the title to land which plaintiffs allege they own. It is stated in the complaint that Alexander Thompson died in 1839, in Mecklenburg County, without having a will, and that defendants in 1912 produced the clerk of the Superior Court of Mecklenburg County a paper-writing purporting to be his will, and caused the same to be probated by said clerk in common form. That Alexander Thompson never signed or executed the said paper as his will, and no proof was offered as to his handwriting, and that the proofs before the clerk were otherwise irregular and defective.

Defendants claim title to the land under the will which plaintiffs allege clouds their title to the same, as the will which was probated

in Mecklenburg County, where the land was situated, at the death of
Alexander Thompson, but since added to Union County by statute, is
not his will and was not properly probated. They pray that the will
and probate be set aside and annulled as a cloud on their title.

The court overruled the motion and the demurrer, and defendants
appealed.

*Redwine & Sikes for plaintiffs.*
*W. O. Lemmond, E. R. Preston, Vann & Prattys for defendants.*

WALKER, J., after stating the case: It may be safely assumed that
the following doctrine has been established by the courts with refer-
ence to the conclusiveness and binding effect of judgment, so long
as they remain in force and unreversed. Where a judgment rendered
by a domestic court of general or superior jurisdiction is attacked in
a collateral proceeding there is a presumption, which can only be
overcome by positive proof, that it had jurisdiction both of the
persons and the subject-matter, and proceeded in the due exercise of its
jurisdiction. "Although the court may be an inferior or limited
tribunal, yet if it has general jurisdiction of any one subject, its
proceedings and judgments in respect thereto will be sustained by
the same liberal presumptions which obtain in the case of Superior
Courts." 1 Black on Judgments (2 Ed.), sec. 282; 23 Cyc., 1078,
1082; *Moffitt v. Moffitt,* 69 Ill., 641. In nearly all the States of the
Union probate courts and orphans' or surrogates' courts now rank
with the courts of general or superior jurisdiction for the purposes
of the rule under consideration, so that it is not necessary for their
records to show the facts essential to sustain their judgments, against
collateral attack, but, on the contrary, their jurisdiction and author-
ity will be presumed. 23 Cyc., 1083. It will be shown hereafter
that these rules prevail with us. "Presumptions against the validity
of the proceedings will not be indulged in, where the record does
not affirmatively show any error or irregularity" (40 Cyc., 1378,
note 28; *McCrea v. Haraszthy,* 51 Cal., 146), which is fatal to the
judgment therein. It has been held that assumption of jurisdiction
by the court is prima facie evidence of the fact that it had it in the
particular case, and throws the burden of disproving it on the party
who denies that jurisdiction existed. 40 Cyc., 1379, note 37;
*Fletcher v. Sanders,* 7 Dana, 345. This doctrine is clearly stated
by *Chief Justice Smith* in *Summer v. Sessoms,* 94 N. C., 376: "It
is true, the record produced does not show that notice was served
on the infant or upon her guardian *ad litem,* nor does the contrary

appear in the record, which, so far as we have it, is silent on the point. The jurisdiction is presumed to have been acquired by the exercise of it, and if not, the judgment must stand and cannot be treated as a nullity until so declared in some impeaching proceeding instituted and directed to that end. The irregularity, if such there be, may be such as to warrant, in this mode, a judgment declaring it null; but it remains in force until this is done." We have approved it in *Burgess v. Kirby,* 94 N. C., 575; *Hargrove v. Wilson,* 148 N. C., 439; *Rackley v. Roberts,* 147 N. C., 201; *Pinnell v. Burroughs,* 168 N. C., 315, 320, and many other cases. This principle was stated and applied by *Justice Hoke,* speaking for the Court in the recent case of *Massey v. Hainey,* 165 N. C., 174, where he says "If this lack of jurisdiction appears of record, the judgment may be treated as a nullity when and wherever relied upon; but in most instances, and this is true where a party, though without authority, appears of record as plaintiff, it is both desirable and necessary that relief should be obtained by direct proceedings, the appropriate method, under our present system, being, as stated, by motion in the cause. *Rackley v. Roberts,* 147 N. C., 201; *Flowers v. King,* 145 N. C., 234; *Grant v. Harrell,* 109 N. C., 78; *Sutton v. Schonwald,* 86 N. C., 198; *Yeargin v. Wood,* 84 N. C., 326; *Doyle v. Brown,* 72 N. C., 393; Black on Judgments, sec. 307." And also it was recognized by *Judge Nash* in *Harven v. Springs,* 32 N. C., 180, 183, in the case of the probate of a will, where he said that there was a presumption in favor of a correct probate, if the will has been admitted to probate. The term judgment implies, prima facie, that all essentials were complied with, even to the extent of presuming, where there were two witnesses to a will, which was proved by one of them, and other evidence, that he testified to the proper execution and attestation of it, as without the necessary proof the court would not have admitted it to probate. These decisions are founded upon one of the favorite maxims of the law, that with regard to judicial proceedings everything is presumed to have been rightly and duly performed until the contrary is shown in the proper way. (*Omnia rite acta præsumuntur.*) Broom's Maxims 944; Co. Litt., 6 and 232.

As jurisdiction is presumed, at least prima facie, any acts or omissions affecting the validity of the proceedings and judgment must be affirmatively shown, and unless the want of jurisdiction, either as to the subject-matter or the parties, appears in some proper form, the jurisdiction and regularity of the proceedings leading up to the judgment will be supported by every intendment. 11 Cyc.,

692, 693. The principle was well expressed by one of the courts: "If the court had jurisdiction of the subject-matter and the parties, it is altogether immaterial how grossly irregular or manifestly erroneous its proceedings may have been; its final order cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. On the other hand, if it proceeded without jurisdiction, it is equally unimportant how technically correct and precisely certain, in point of form, its record may appear; its judgment is void to every intent and for every purpose." *Sheldon v. Newton,* 3 Ohio St., 498. Or, as expressed in another case: "The power to review and reverse the decision so made is clearly appellate in its character and can be exercised only by an appellate tribunal in a proceeding directly had for that purpose. It cannot and ought not to be done by another court, in another case, where the subject is presented incidentally, and a reversal sought in such collateral proceeding. The settled rule of law is that jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of. the rights of the parties, unless impeached for fraud. Every intendment is made to support the proceeding. It is regarded as if it were regular and irreversible for error. In the absence of fraud, no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case." *Nash v. Williams,* 87 U. S. (20 Wall.), 226; approved in *Laing v. Riley,* 160 U. S., 531. "The rules as to the presumption in favor of courts of general jurisdiction apply to courts of probate and those with like powers, where they are courts of general jurisdiction or possess the attributes thereof, even though they have not exclusive jurisdiction, or have a limited but not a special jurisdiction, or their powers are limited to certain specified subjects." 11 Cyc., 694. And Mr. Black, says, in his work on Judgments, vol. 1 (2 Ed.), sec. 282: "It is further to be remarked that although a court may be an inferior or limited tribunal, yet if it has general jurisdiction of any one subject, its proceedings and judgments in respect to that subject will be sustained by the same liberal presumptions as to jurisdiction which obtain in the case of the superior courts." Our statute makes the record and probate of a will, even in common form, "conclusive as evidence of the validity of the will, until it is vacated on appeal or declared void by a competent tribunal." Revisal, secs. 3128, 3139.

The presumption, then, being in favor of the will and probate, the burden is upon him who would assail it. He may impeach them directly, but not collaterally. "It is well settled that a judgment

STARNES *v.* THOMPSON.

or decree admitting a will to probate, when made by a court having jurisdiction thereof, may be attacked only in such direct proceedings as are authorized by statute, and that is is not open to attack or impeachment in a collateral proceeding. More specifically, it is not permissible to collaterally attack such a judgment or decree on the ground that certain errors and irregularities exist, which if shown really to exist would, at the most, make the judgment only voidable, such as an alleged fact that the persons interested were not all duly cited or given notice or made parties; that the probate was granted on insufficient proof, as where it was granted on production of a copy instead of an original will; that the execution of the will was defective and insufficient; that the order admitting the will to probate does not use the exact language of the statute; that there was no formal entry of the judgment; that the decree contained a translation of the will into English, or that the jury were erroneously instructed and returned a verdict contrary to the evidence; but when irregularities of this nature are alleged in a collateral proceeding, the court will indulge in liberal and conclusive presumptions in favor of the sufficiency of the record and proceedings, such as a presumption that proper and sufficient notice was given; that the petition for probate was properly filed; that orders continuing the hearing were regularly made; that the execution, attestation, and proof of the will were sufficient; that the testator possessed testamentary capacity, and that the instrument probated is sufficient to pass such property as it purports to pass. It is even held that fraud is not a ground of collateral attack, as the identity, validity, and sufficiency of the instrument propounded as the last testamentary act of the deceased is the very question determined; and while a judgment or decree relating to the probate of a will is open to collateral impeachment, when it has been rendered by a court which was wholly without jurisdiction, the determination, by the officer or court probating the will, that the requisite jurisdictional facts, such as the residence of the testator at the time of his death or the situation of his property within the county, exist, is conclusive and not open to collateral attack." 40 Cyc., 1377, 1378. It is said in 1 Black on Judgments (2 Ed.), sec. 250: "The well recognized rule is that the judgments and decisions of an inferior court can in no case be assailed indirectly on account of errors or irregularities not affecting the jurisdiction." And again: "On similar principles, an order or decree of a surrogate, or probate or orphans' court, jurisdiction having attached, is not examinable in any collateral proceeding. In fact, the orders and judgments of probate courts concerning matters over which they

have jurisdiction are no more open to collateral attack than are the orders and judgment of other courts of general jurisdiction; they must have accorded to them the same intendments and favorable presumption which attend the judgments of courts of general common-law jurisdiction. This rule applies to an order admitting a will to probate."

These established rules of the law with respect to the judgments of probate courts have been adopted by us. In *London v. R. R.*, 88 N. C., 584, the questions involved in this case were fully considered and decided contrary to plaintiff's contention. *Chief Justice Smith* said: "The general rule is well settled that the judgment of the probate court, in which is vested exclusive jurisdiction to pass on wills of personalty (and in this State by statute of realty also) and to grant letters testamentary or of administration, is conclusive of the right determined, and is not exposed to impeachment collaterally in another court where the effect of the action is to be considered. A probate in common form, unrevoked, is conclusive in courts of law and equity as to the appointment of an executor and the validity and contents of a will; and it is not allowable in an action to show that another was appointed executor. This is the principle announced in the elementary books. Williams' Exrs., 339; Toller, 76. 'The probate,' says *Buller, J.*, 'is conclusive till it be repealed, and no court of common law can admit evidence to impeach it.'" He then says that the probate courts of this State have the jurisdiction of the ecclesiastical courts of England, with the same effect in regard to their proceedings and judgments. This is affirmed in *Ro. Nav. Co. v. Green*, 14 N. C., 434; *Redman v. Graham*, 80 N. C., at page 234, per *Ashe, J.* And *Judge Pearson*, speaking with reference to the probate of deeds and wills, and the difference between them, said in *Barwick v. Wood*, 48 N. C., 311: "There may be a distinction between this class of cases and the probate of wills of personalty. In England the ecclesiastical court has exclusive jurisdiction; the question of the execution of a will is tried by the certificate of the ordinary, and the courts of common law do not review his decision, holding that it cannot be impeached collaterally, and must be set aside by a direct proceeding in the court of probate. In this State the county court is substituted in place of the ecclesiastical court, with the right of appeal, which is quite different from an *ex parte* probate (as in case of a deed); and it would seem that when a court has exclusive jurisdiction, and a case is properly constitued before it, its action must be conclusive until it be reversed." In *London v. R. R., supra*, the allegation in the collateral suit was that the paper which had been first probated as the will of the deceased was not his will, as it had been revoked by a subsequent one,

but the Court refused to hear the plaintiff. So here, the plaintiffs attack this will because it was not the will of the alleged testator, and we must follow the course taken in that case. This question is fully considered by the Court in *Batchelor v. Overton,* 158 N. C., 397, where *Justice Hoke* says: "Notwithstanding these requirements of the statute, it is very generally held that when a clerk of our Superior Court in the exercise of the probate powers conferred by statute, has general jurisdiction of the subject-matter of inquiry, as indicated in chapter 1, sec. 16, Revisal, and on application made has entered a decree appointing an executor or administrator, and letters are accordingly issued, such decree is controlling and may not be successfully attacked or in any way questioned but by direct proceedings instituted for the purpose. *Fann v. R. R.,* 155 N. C., 136; *Jordan v. R. R.,* 125 Wis., 581, 4 Anno. Cases, 1113; Croswell on Executors, pp. 19-127. In *Fann's case,* speaking to the general question, the Court said: 'In this day and time and under our present system it seems to be generally conceded that the decrees of probate courts, when acting within the scope of their powers, should be considered and dealt with as orders and decrees of courts of general jurisdiction, and, where jurisdiction over the subject-matter of inquiry has been properly acquired, that these orders and decrees are not as a rule subject to collateral attack.' " To the same effect are *McClure v. Spivy,* 125 N. C., 678, the second headnote of that case being as follows: "Probate of a will by the Clerk of the Superior Court is a judicial act, and his certificate is conclusive evidence of the validity of the will until vacated on appeal or declared void by a competent tribunal in a proceeding instituted for that purpose. It cannot be vacated in a collateral manner. *Mayo v. Jones,* 78 N. C., 402." It is held in the recent case of *Powell v. Watkins,* 172 N. C., 244, that in this State "The proceeding for the probate of a will is not regarded as an adversary suit *inter partes,* but is a proceeding *in rem,* in which the jurisdiction of the court, in the exercise of probate powers, is exclusive, and an adjudication of probate may not be assailed or questioned in any collateral or independent proceedings. *Collins v. Collins,* 125 N. C., 98, 34 S. E., 195; *McClure v. Spivy,* 123 N. C., 678, 31 S. E., 857; *Varner v. Johnson,* 112 N. C., 570, 17 S. E., 483; *McCormick v. Jernigan,* 110 N. C., 406, 14 S. E., 971; *Hutson v. Sawyer,* 104 N. C., 1, 10 S. E., 85."

In this case it appears by presumption and otherwise that Alexander Watkins, who was domiciled in Mecklenburg County, died there many years ago, and that some time after his death the paper-writing in question was filed before the clerk of the Superior Court of said county for probate as his last will and testament, and was declared to be his will and admitted to probate and recorded. The controversy has, in

part, arisen from the fact that a part of the territory of Mecklenburg County was taken to form Union County, and the lands in question are situated within the severed territory. But this does not affect the jurisdiction of the clerk of Mecklenburg County, as the testator still had lands, or *bona notabilia,* in the latter county, and was domiciled there at the time of his death, which appears from the probate, and the will was properly probated there.

It appears that the execution of the will was proved by the witness Mrs. Eliza Griffin, and the hand-writing of the other subscribing witness by his son, Harmon B. King. It may be that the proof is not as formal or as full as it might have been, or as it should have been, but the probate is not so radically defective as to admit of collateral attack, as the above authorities clearly show.

The court should have dismissed the action upon the first motion made by the defendants, for the want of jurisdiction, and also because there was no cause of action stated which was properly cognizable in that court, as the probate proceedings before the clerk of the Superior Court of Mecklenburg County cannot be thus collaterally attacked, and this reverses the judgment.

Reversed.