CLYDE O'NEAL GILLIKIN, BY HIS NEXT FRIEND, LOLA GILLIKIN
v. RICHARD GILLIKIN.

(Filed 24 February, 1960.)

**1. Compromise and Settlement—**

The execution of a compromise and settlement by payment in accordance with a valid judgment entered in an *ex parte* proceeding, G.S. 1-400, G.S. 1-402, of the sum stipulated for the benefit of a minor, represented in the proceeding by a duly appointed next friend, is valid and binding, and precludes the minor from thereafter maintaining an action based upon the same cause of action.

**2. Pleadings § 5a—**

It is not required that a petition in an *ex parte* proceeding be verified.

**3. Infants § 5: Judgments § 25—**

A judgment entered in an *ex parte* proceeding authorizing the next friend of a minor to accept on behalf of the minor a sum offered by insurer in settlement of a claim, which judgment is approved by the resident judge, is not void for mere irregularities, and it being found that the interest of the minor was duly represented by the next friend of the minor and the attorney employed by him, and that the settlement constituted a good and substantial recovery on behalf of the minor, so that there is no *indicia* of fraud, the judgment is not subject to collateral attack, and precludes an action by the minor or his next friend to recover on the same cause of action.

APPEAL by plaintiff from *Bundy, J.,* October Term, 1959, of CARTERET.

GILLIKIN *v.* GILLIKIN.

This is a civil action instituted by the plaintiff, by his duly appointed next friend, his father, Lola Gillikin, on 21 January 1956, to recover damages for personal injuries sustained 18 April 1954, when the plaintiff was 17 years old, allegedly caused by the negligence of the defendant.

The defendant in his answer denied negligence and pleaded plaintiff's contributory negligence; and as a plea in bar alleged that all matters in controversy had been compromised and settled by the defendant's payment of $7,000 which had been authorized and directed by a judgment entered 27 January 1955, signed by the Clerk of the Superior Court of Carteret County and approved by the Resident Superior Court Judge of the District.

At the June Term, 1958, of Carteret Superior Court the court held that this action "was an attempt to collaterally attack said judgment of January 27, 1955" and dismissed the action. On appeal to this Court we vacated the order dismissing the action and remanded for the purpose of having the court below determine whether or not the compromise and settlement purportedly authorized by the judgment entered on 27 January 1955, had been consummated. Our opinion is reported in 248 N.C. 710, 104 S.E. 2d 861.

When this cause came on for hearing at the October Term, 1959, it was stipulated that the parties waived a jury trial and agreed that the court should find the facts pertaining to the plea in bar and should enter judgment in accordance with its findings. The court below found the facts and entered judgment as follows:

"1. That Clyde O'Neal Gillikin was an infant without general or testamentary guardian when injured in the automobile accident referred to in the pleadings.

"2. That shortly thereafter and after treatment at the hospital in Morehead City and in Memorial Hospital in Chapel Hill by Dr. Way and others, the father of Clyde O'Neal Gillikin, Lola Gillikin, engaged * * * the services of Hon. Luther Hamilton, a practicing attorney at law, to represent the said Clyde O'Neal Gillikin in obtaining damages for the injuries suffered by Clyde O'Neal Gillikin in the accident referred to above.

"3. That pursuant to said engagement, the said Luther Hamilton, Esq., under negotiations looking to a settlement contacted and negotiated with a representative of the United States Fidelity & Guaranty Company, the insurance carrier for Richard Gillikin, the defendant, and as a result of the said negotiations, it was agreed between the said Lola Gillikin, acting for and on behalf of Clyde O'Neal Gillikin through his attorney Luther Hamilton, Esq., on the one part,

and the United States Fidelity & Guaranty Company on the other part, that a payment of $7,000 would be made in full settlement of the damages suffered by Clyde O'Neal Gillikin by reason of the accident referred to, said amount to include the doctors' services, the hospital and medical bills and an amount for loss of the services of the said Clyde O'Neal Gillikin by Lola Gillikin.

"4. That pursuant to said agreement, the said Luther Hamilton, Esq., caused to be prepared a complaint entitled 'Clyde O'Neal Gillikin by his Next Friend, Lola Gillikin, v. Richard Gillikin,' and the said Lola Gillikin applied to the Clerk of the Superior Court of Carteret County, Hon. A. H. James, for an appointment as Next Friend, and he, the said Lola Gillikin, accepted said appointment made by the Clerk and agreed to act in said capacity.

"5. That before the summons was issued or the prepared complaint filed, the said Luther Hamilton, Esq., contacted the attorney representing Richard Gillikin and discussed with him the question of the said Richard Gillikin filing an answer to the proposed complaint, thereby planning to institute a so-called 'friendly suit' for the purpose of having the court sanction said settlement, but the said attorney for Richard Gillikin informed the said Luther Hamilton, Esq., attorney for Lola Gillikin, Next Friend of Clyde O'Neal Gillikin, that he could not get the consent of Richard Gillikin to file such an answer because Richard Gillikin contended that he had not been guilty of any negligence and would not participate in any agreement to pay Clyde O'Neal Gillikin, or his next friend, any sum of money by reason of his, Richard Gillikin's, act or failure to act.

"6. That in consequence of the above, the said Luther Hamilton, Esq., attorney as aforesaid, for and on behalf of the said Lola Gillikin, next friend of Clyde O'Neal Gillikin, began a special proceeding before the Clerk of the Superior Court of Carteret County, in which he filed an *ex parte* petition in the name of Lola Gillikin, next friend, setting forth the desirability of a settlement as had been agreed upon, the same being presented to the court on or about the 27th day of January 1955; the petition was not signed by Lola Gillikin, next friend, for the reason that the said Lola Gillikin at said time was confined to the hospital with a heart attack and the said Luther Hamilton, Esq., was not prepared to discuss any business with him although he attempted to do so.

"7. That during all the matters above set forth, the said Lola Gillikin in the presence of his ward, Clyde O'Neal Gillikin, who is now of age, was often in the office of Luther Hamilton, Esq., and as testified to from the stand by both father and son, they arranged to bor-

row $350.00 from the bank upon the endorsement of the said Luther Hamilton, Esq., for the necessities of Lola Gillikin and his family, the reason given being that Lola Gillikin had lost the services of Clyde O'Neal Gillikin and was out of work himself and that money would be coming from the settlement to the extent that the same could be claimed by Lola Gillikin and be used to discharge said note, and during said time and upon said visits, both the said Lola Gillikin and Clyde O'Neal Gillikin being present, money was advanced by the said Luther Hamilton, Esq., in respective sums of twenty- five dollars and fifty dollars, for a total of $150.00, several of the checks therefor being marked 'for adv.,' each check being payable to Lola Gillikin and endorsed by him, to which fact he testified from the stand. The said Luther Hamilton, Esq., in regard to the checks testified that 'adv.' on the checks was to indicate advancements, and that it was agreed and understood between the parties that he would be reimbursed out of moneys derived from the settlement which had been agreed upon.

"8. The said Lola Gillikin admitted endorsing said checks and using the same, but denied signing the acceptance to serve as next friend and denied signing the verification to the complaint which was prepared but not filed.

"9. The court finds as a fact from the examination of the handwriting on the checks and the acceptance of the appointment as next friend and the verification of the complaint, that the same were in the same and identical handwriting, and the court further finds that the said Lola Gillikin did sign the acceptance of the appointment as next friend and the verification of the complaint.

"10. The court further finds from the evidence and the pleadings and the order of the Clerk, that the settlement for Seven Thousand Dollars constitutes a good and substantial recovery on behalf of the plaintiff, and that in the court's opinion it is equal to or more than would have been awarded by a jury under the facts disclosed to the court.

(Nos. 11 and 12 not necessary to decision herein.)

"13. Upon all the evidence and the above findings, the court finds that there is no irregularity in the proceedings which has prejudiced the said Clyde O'Neal Gillikin, and that his rights have been protected fully by the proceedings had and that the compromise settlement was fully authorized by the said Lola Gillikin, next friend of Clyde O'Neal Gillikin, and that the said Clyde O'Neal Gillikin, while under age was old enough to understand the negotiations and the con-

ferences referred to in the above findings and that he concurred therein.

"14. The court finds that the failure of the petition in the *ex parte* proceedings to be signed by Lola Gillikin as next friend is not such an irregularity as to make said proceedings void.

"15. The court further finds that the failure of Lola Gillikin to sign the same was not the cause of any objection to said settlement but because of his illness, and that upon all the facts disclosed herein, the court is of the opinion that had said petition been presented to the said Lola Gillikin at the time of his illness and before the settlement was fully consummated, that the said Lola Gillikin would have signed the same.

"16. The court finds that it would be inequitable to permit the plaintiff, Lola Gillikin or Clyde O'Neal Gillikin, who has now become of age, to upset and disturb said settlement.

"Upon the foregoing findings of fact, it is considered, ordered and adjudged by the court that the plaintiff's action is barred by reason of the consummated compromise and settlement of the matters in controversy growing out of said automobile accident, and that the defendant has sustained the burden of establishing the same by the evidence offered to the court.

"It is further considered, ordered and adjudged that the action of the plaintiff be and the same is hereby dismissed without prejudice to the right of the plaintiff to petition the Clerk of the Superior Court of Carteret County for distribution of the funds remaining in the Clerk's hands at this time, and that the plaintiff will pay the costs of the proceedings to be taxed by the Clerk."

The plaintiff appeals, assigning error.

*Jones, Reed & Griffin for plaintiff.*
*Claud R. Wheatly, R. E. Whitehurst, David S. Henderson for defendant.*

DENNY, J.  On the former appeal, *Bobbitt, J.*, speaking for the Court, said: "The judgment of January 27, 1955, purports to confer authority for the proposed settlement. But, until it is first established that a compromise and settlement has been consummated in accordance with the provisions of the judgment of January 27, 1955, we do not reach questions relating to the validity of the judgment or to the legal procedure by which it may be attacked.

"It follows that the judgment, standing alone, whatever its validity and however it may be attacked, does not constitute an estoppel. To

GILLIKIN *v.* GILLIKIN.

establish his plea in bar, defendant must show a legally authorized and consummated compromise and settlement. Defendant's plea in bar, whether considered as a plea of estoppel by compromise and settlement, *Winkler v. Amusement Co.,* 238 N.C. 589, 598, 79 S.E. 2d 185, or as a plea of *res judicata, Reid v. Holden,* 242 N.C. 408, 411, 88 S.E. 2d 125, or a combination of both, is an affirmative defense. Hence, it is incumbent upon defendant to establish all facts necessary to support such plea."

The evidence adduced in the hearing below was sufficient to sustain the findings of the court, and the findings are sufficient to support the judgment to the effect that there was a compromise and settlement of the matters in controversy growing out of the automobile accident involved, and that such compromise and settlement was consummated by the payment of $7,000 into the office of the Clerk of the Superior Court of Carteret County by the insurance carrier of the defendant, all in accordance with the judgment entered on 27 January 1955.

As we interpret the record, the only additional question to be determined is whether or not the judgment entered on 27 January 1955, authorized such settlement.

The *ex parte* proceeding was brought pursuant to the provisions of G.S. 1-400, and the petition filed therein by the attorney for Clyde O'Neal Gillikin and his next friend, Lola Gillikin, set out the facts with respect to the alleged injuries, the doubtfulness of the ability of Clyde O'Neal Gillikin to recover from Richard Gillikin in an action, and further set out that the insurance carrier of Richard Gillikin, the defendant in the action now on appeal, had offered the sum of $7,000 in full settlement of any and all claims arising out of the automobile collision.

The Clerk of the Superior Court of Carteret County, in a hearing on 27 January 1955, after hearing the testimony of the attending physician of Clyde O'Neal Gillikin, and with the approval of counsel for Clyde O'Neal Gillikin and his next friend, found as a fact that the interest of the minor, Clyde O'Neal Gillikin, would be promoted by authorizing the proposed compromise and settlement and entered judgment accordingly, and the settlement was approved by the Resident Judge of the District as provided in G.S. 1-402.

There is evidence sufficient to establish the fact that Clyde O'Neal Gillikin and his next friend knew and approved of the proposed compromise and settlement. Of course, the minor could not be bound thereby except in a manner provided by law. It is not necessary, however, for such minor to know that an action or special proceeding is brought

in his behalf. *Credle v. Baugham*, 152 N.C. 18, 67 S.E. 46, 136 Am. St. Rep. 787; *Tate v. Mott*, 96 N.C. 19, 2 S.E. 176.

In the last cited case, Samuel J. Doughit, a citizen and resident of South Carolina, was appointed guardian in that State of certain minor children of William S. Tate. Tate had died intestate in Iredell County, North Carolina. The widow, after the death of her husband, took said children to South Carolina to live. The guardian came to North Carolina and instituted an *ex parte* proceeding to sell certain lands in which his wards had an interest. He had no right, as a South Carolina guardian, to institute the proceeding in North Carolina, but should have applied to the court for appointment as next friend. This he did not do. Later, it was contended that the judgment under which the land was sold was void. This Court said: "The infants appeared by a person undertaking to represent and acting for them, not altogether officiously, but who had not been appointed by the court for that purpose. He did irregularly what was necessary and proper to be done by a next friend. It must be so taken, because, as we have said, the Court recognized him as serving a proper purpose—that of a next friend—and acted upon the appearance of the infants by him. Otherwise, it would not have granted the prayer of the petition. *White v. Albertson, supra* (14 N.C. 241). It was essential that there should be an appearance by a next friend, who ought to have been regularly appointed, but as one appeared in fact, and the court so treated him, that was sufficient for the purpose of acquiring complete jurisdiction. So far as appears from the record, the infants appeared advisedly in court in their own special proceeding and obtained relief for their benefit.

"The court therefore erred in deciding that the proceeding in question, including the orders, judgments and the sale of the land complained of, was void. They were not void, and nothing is alleged or proven, that would warrant the Court in setting them aside."

The petition in the *ex parte* proceeding pleaded as a bar to this action, was not verified due to the illness of the next friend. Even so, it was not necessary for it to be so verified.

In the case of *Lindsay v. Beaman*, 128 N.C. 189, 38 S.E. 811, which involved an *ex parte* proceeding for the partition of land, the petition was not verified, and this Court said: "We know of no statute which requires the petition in a special proceeding to be verified." The judgment, however, had not been approved by the judge. The Court said: "As to the infant petitioner, *it is invalid only in so far as it may be prejudicial to her interest.* Code, sec. 286 (now G.S. 1-402). It is good so long as it remains unchallenged, which she may do by motion in

the cause, and for proper cause shown have it set aside." (Emphasis added)

In the case of *Tyson v. Belcher,* 102 N.C. 112, 9 S.E. 634, there was an *ex parte* proceeding to sell certain land. The land was sold in accordance with the judgment entered in the special proceeding and approved by the Judge. In an action attacking the proceeding, on the trial, the defendant offered in evidence a transcript of the record of the *ex parte* proceeding. The plaintiff objected and excepted to its admission on the ground that such record was void on its face for irregularities, and because the order of sale therein set forth, and the sale of the land in pursuance of it, were contrary to the provisions of the will devising said land. The Court, in approving the admission in evidence of the transcript of the record of the *ex parte* proceeding, among other things, said: "From an examination of the transcript of the record of the *ex parte* proceeding, objected to as evidence, it appears that the court could have, and did take, in an orderly way, jurisdiction of the parties to and the subject-matter of, the proceeding. The petitioners were represented by counsel and the petition was filed as allowed by the statute (The Code, sec. 286). If there were irregularities at all in the course of the proceeding they certainly were not such as rendered it, or the orders and judgment therein entered, absolutely void; at most they were only voidable, and could not, therefore, be attacked collaterally. In such case the remedy would be by a proper motion in the proceeding itself. If it were affected by fraud, then * * * the remedy would be by an independent action for the purpose of having the judgment, or the whole proceeding, accordingly as the case might be, adjudged void for fraud." *Coffin v. Cook,* 106 N.C. 376, 11 S.E. 371; *Rackley v. Roberts,* 147 N.C. 201, 60 S.E. 975.

This Court, in *Starnes v. Thompson,* 173 N.C. 466, 92 S.E. 259, quoted with approval from the case of *Sheldon v. Newton,* 3 Ohio St. 498, the following: "If the court had jurisdiction of the subject-matter and the parties, it is altogether immaterial how grossly irregular or manifestly erroneous its proceedings may have been; its final order cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached."

No fraud is alleged in connection with the *ex parte* proceeding brought for the purpose of obtaining the approval of the court of the compromise and settlement for the injuries involved in this case. The petitioner and his next friend were represented by able counsel. "A judgment for or against an infant when he appears by attorney, and without guardian or next friend, is not void. It is only voidable * * *." *Tate v. Mott, supra.* Therefore, any irregularities in the *ex parte* pro-

ceeding under consideration were not sufficient to make the judgment entered therein void. At most, it could be no more than voidable and, therefore, binding until set aside by motion in the cause and is not subject to collateral attack. *Tyson v. Belcher, supra.* Moreover, nothing appears in this record that would justify the setting aside of the judgment for irregularities or otherwise. *Tate v. Mott, supra.*

The plaintiff sets out 24 assignments of error purporting to preserve 226 exceptions, and these assignments of error cover more than 22 pages of the record. We have carefully examined these exceptions and assignments of error but have not attempted to discuss them *seriatim.* In our opinion, however, they present no prejudicial error that would justify a modification or reversal of the judgment entered below.

Affirmed.