BARBARA SELL, BY HER NEXT FRIEND, WILLIAM A. BASON v. ARLO M. HOTCHKISS.

AND

MARGARET M. COLLER v. ARLO M. HOTCHKISS.

AND

MARGUERITE M. HOTCHKISS v. ARLO M. HOTCHKISS.

(Filed 7 April, 1965.)

**1. Evidence § 3;   Torts § 7—**

Ambiguity in a written contract will be resolved against the party preparing the instrument, and the courts will take judicial notice that releases and covenants not to sue are ordinarily prepared by the insurer of the releasee or covenantee, and also that such covenants are intended for use in the several states.

**2. Negligence § 9—**

A party compelled to pay for an injury solely under the doctrine of *respondeat superior* may recover indemnity against his agent whose negligence caused the injury.

**3. Torts § 7—   Covenant not to sue one driver and those for whose acts or to whom he may be liable held not to preclude suit against other driver.**

Passengers in a car involved in a collision executed a covenant not to sue in favor of the driver of the other car involved in the collision, his agents, successors and assigns, and "all other persons, firms, or corporations for whose acts or to whom they or any of them might be liable" and expressly reserved the right to proceed against all others. *Held:* The phrase "for whose acts or to whom" the covenantees might be liable may be given significance only by construing it with reference to the principal-agent relationship and the right to indemnity arising therefrom, and such construction is also necessary in order to give any effect to the reservation of rights against others, and therefore the covenant not to sue does not preclude the passengers from thereafter instituting an action to recover for the negligence of the driver of the car in which they were riding.

**4. Contracts § 12—**

A contract will be construed to give effect to the intent of the parties as ascertained from the language used considered in the light of the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.

**5. Infants § 1—**

The right of an infant to recover for a tort done him cannot be precluded by a covenant not to sue executed by his parent, since a settlement of an infant's tort claim becomes effective only upon judicial examination and adjudication

APPEAL by defendant from *Crissman, J.,* February 1964 Civil Term of WAKE. This appeal was docketed and argued in the Supreme Court at the Fall Term 1964 as cases nos. 475, 476, and 477.

SELL *v.* HOTCHKISS AND COLLER *v.* HOTCHKISS AND HOTCHKISS *v.* HOTCHKISS.

These three actions for personal injuries, each instituted on August 5, 1963, grow out of the same automobile accident. Each appeal tests the ruling on plaintiff's demurrer and motion to strike directed to defendant's Second Further Answer and Defense. The cases were briefed and argued here as one.

Allegations and admissions in the pleadings reveal these facts: Plaintiffs and defendant are residents of Connecticut. On August 10, 1960, the three plaintiffs were passengers in an automobile owned and operated by defendant. On that date, on U. S. Highway No. 301, near Rocky Mount, defendant's vehicle had a head-on collision with an automobile operated by F. S. Hinkley, a resident of Florida. The collision occurred when Hinkley drove to his left of the center of the highway in an attempt to pass another car proceeding in the same direction. As a result of the impact each plaintiff was injured, and each alleges that defendant's negligence was a proximate cause of her injuries. In identical answers to each complaint, defendant denies any negligence on his part and alleges that the collision was caused solely by the negligence of Hinkley. As a Second Further Answer and Defense he pleads a covenant not to sue, which plaintiff had executed and delivered to Hinkley. Except for the recited consideration the covenants are identical. To plaintiff Marguerite M. Hotchkiss, Hinkley paid $2,500.00; to plaintiff Margaret M. Coller, $6,667.00; to Marguerite M. Hotchkiss, "mother and natural guardian of Barbara Sell, minor," he paid $2,900.00. The covenant which defendant pleads as a defense to the suit of Barbara Sell, minor, was signed Marguerite M. Hotchkiss, "mother and natural guardian of Barbara Sell." The covenants (consideration and signatures left blank) are in identical words as follows:

### COVENANT NOT TO SUE

FOR THE SOLE AND ONLY CONSIDERATION OF.................... ..............., receipt of which is hereby acknowledged; the undersigned (and each of them, if more than one), does hereby covenant and agree to forever refrain from instituting, prosecuting or in any way aiding any claim or suit against Frank Sylvester Hinkley of West Palm Beach, Florida, and all agents, successors and assigns thereof, and all other persons, firms and corporations for whose acts or to whom they or any of them might be liable, (hereinafter referred to as said parties), for or on account of injuries or damages to person or property, or both, or loss of time, or loss of services or society, or expenses, or impairment or loss of any right, or other loss, cost or damage of·any and every nature whatsoever, sustained by or accruing to the undersigned, whether now known or unknown, resulting from, or in any manner connected with or

growing out of accident or occurrence on or about August 10, 1960, at or near U. S. Route 301, near Perkins' Metal Driveway, in Rocky Mount, North Carolina; and to indemnify them for and save them harmless from all loss, cost and expense resulting from any such claim or suit.

For said consideration it is hereby further agreed: that no promise or agreement not herein expressed has been made; that this agreement is not executed in reliance upon any statement or representation made by said parties, or any of them, or by any person employed by or representing them, or any of them; that all claims, if any, for attorneys' liens are included in this agreement; that the payment of said consideration is not to be construed as an admission of liability, all liability being expressly denied by said parties; that all rights which the undersigned may have to proceed against all parties other than said parties are expressly reserved; and that the terms hereof are contractual and not mere recitals.

I Have Read the Foregoing Covenant not to sue and Fully Understand it.

Executed this 25th day of July 1963.

(s) ............... ........................................... (Seal)

From a judgment sustaining each plaintiff's demurrer to defendant's Second Answer and Defense and her motion to strike it, defendant appeals.

*Yarborough, Blanchard & Tucker for plaintiff appellees.*
*Lake, Boyce & Lake for defendant appellant.*

Sharp, J.   The essential terms of the covenant not to sue are these:

"(T)he undersigned . . . does hereby covenant and agree to forever refrain from instituting, prosecuting or in any way aiding any claim or suit against Frank Sylvester Hinkley . . . and all agents, successors, and assigns thereof, and all other persons, firms and corporations for whose acts or to whom they or any of them might be liable . . . for or on account of injuries or damages to person or property . . . sustained by or accruing to the undersigned . . . resulting from, or in any manner connected with or growing out of accident or occurrence on or about August 10, 1960, at or near U. S. Route 301 . . . Rocky Mount, North Carolina . . . All rights which the undersigned may have to proceed

against all parties other than said parties are expressly reserved; and that the terms hereof are contractual and not mere recitals."

The determinative question is: By this covenant did each plaintiff, as defendant contends, agree not to sue defendant, as well as Hinkley? Defendant's argument is:

(1)   That plaintiff has covenanted not to sue:

    (a)   Hinkley "and all agents, successors and assigns there-of,"

and   (b)   "All other persons, firms and corporations *for whose acts* . . . they or any of them (*i.e.* Hinkley and his agents, successors, and assigns) might be liable," (Italics ours)

or   (c)   "All other persons, firms, and corporations . . . *to whom* they or any of them (*i.e.* Hinkley and his agents. successors and assigns) might be liable"; (Italics ours)

(2)   That Hinkley might be liable to defendant for contribution, since defendant is the only other possible active joint tort-feasor;

(3)   That, therefore, under (1) (c) above, plaintiff has agreed not to sue defendant.

Plaintiffs' counter to this argument is that defendant's interpretation of the covenant is strained and ignores the clear intent of the parties.' They correctly point out that defendant's argument ultimately hangs on the clause, "and all other persons, firms and corporations for whose acts or to whom they or any of them might be liable," (1) (c) above. They denominate this clause "a perfect example of gobbledygook which sometimes creeps into stereotyped instruments." For good measure plaintiffs then add that "it would be a formidable challenge to the average law professor, an absurdity to the English student, and an absolute nullity to a layman of normal intelligence."

We are compelled to agree that this covenant, at least upon first perusal, is certainly not the plain and unambiguous document which every painstaking craftsman attempts.

Since the three covenants under consideration here are in identical language, we are, we think, justified in assuming that the agreement was prepared by a representative of defendant. Indeed, we take notice that nowadays both covenants not to sue and releases are ordinarily prepared by attorneys representing the insurance company of the covenantee or releasee, and that they are intended for use in the several states, as this case illustrates. It is a rule of construction that "an am-

biguity in a written contract is to be inclined against the party who prepared the writing," *Jones v. Realty Co.*, 226 N.C. 303, 305, 37 S.E. 2d 906, 907, here defendant.

Had both parties to the covenant meant to take away the right of plaintiffs to sue defendant, how easily this result could have been accomplished by simply saying, "The undersigned further covenants not to sue any person to whom Hinkley, his principal, or his agents, might be liable for contribution in any action growing out of the aforesaid accident." This they did not say, but they did expressly stipulate that "all rights which the undersigned may have to proceed against all parties other than said parties are expressly reserved." The "said parties" are "all other persons, firms and corporations for whose acts or to whom they or any of them might be liable." "They" means Hinkley, his agents, successors, and assigns.

If this final stipulation is to mean anything at all, it must mean that plaintiffs, covenantors, were reserving their rights of action against defendant. Who, then, specifically, are the "said parties" for whose acts and to whom Hinkley, his agents, successors, and assigns (Hinkley *et al.*) might be liable and whom plaintiffs have agreed not to sue? The answer is, we think, that "said parties" are those who stand in the relationship of either principal or agent to Hinkley. The "said parties" *to whom* Hinkley, his agents, successors, and assigns (Hinkley *et al.*) might be liable would be Hinkley's principal, if any, who would be jointly and severally liable with Hinkley to third persons for Hinkley's primary negligence and whom Hinkley would be liable to indemnify for any loss Hinkley's negligence caused the principal. "Said parties" *for whose acts* Hinkley *et al.* might be liable are their own agents, if any, for whose negligence Hinkley as principal would be similarly liable and entitled to indemnification. As to third persons, the principal and his agent are jointly and severally liable for the agent's negligent acts committed within the scope of his employment; but, when a principal's liability rests solely upon the doctrine of *respondeat superior*, he may recover over against the agent if compelled to pay damages for the agent's negligence. *Steele v. Hauling Co.*, 260 N.C. 486, 490, 133 S.E. 2d 197, 200. See *Cox v. Shaw*, 263 N.C. 361, 367, 139 S.E. 2d 676, 681.

On the question whether a covenant not to sue the master or the servant will likewise bar a suit against the other, courts are not in agreement. 35 Am. Jur., Master and Servant § 535 (1941). See Annot., Release of (or covenant not to sue) one tort-feasor as affecting liability of others, 124 A.L.R. 1298, 1312; Annot., Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa, 92 A.L.R. 2d 533.

"(I)t is suggested that where there is any possibility that a tort-feasor compromising a claim may be or become liable to contribute to or reimburse any other tort-feasor or person whatsoever for any damages which the latter may be required to pay the injured party on account of the tort, such tort-feasor should insist that the injured party give him a release without reservation of rights against others, instead of a covenant not to sue or a release reserving rights against other parties. Otherwise, if he accepts a mere covenant not to sue, he may find himself called upon to pay damages in addition to the amount he has already paid in consideration of the covenant," Annot., 124 A.L.R. 1298, 1312.

The crucial clause here under consideration, "for whose acts or to whom" said parties might be liable, makes sense when related to those relationships involving primary and secondary liability and requires no such strained construction as that for which defendant contends. Only by relating this clause to the principal-agent relation can the final stipulation as to reservation of rights have any meaning at all. A contract must be construed as a whole, and each of its provisions must be examined in its proper relation to the others. Furthermore, each provision of a contract must be given effect if such a result can be fairly and reasonably accomplished. *Jones v. Realty Co., supra; Electric Supply Co. v. Burgess,* 223 N.C. 97, 25 S.E. 2d 390.

With those persons to whom and for whom Hinkley might be liable thus identified and segregated as persons within a principal-agent relationship, against whom have plaintiffs, covenantors, reserved rights? Defendant alone. He is the only other possible joint tort-feasor, and he and Hinkley, the covenantee, are not in the relationship of principal and agent. We are strengthened in this conclusion by *Holland v. Utilities Co.,* 208 N.C. 289, 180 S.E. 592, wherein the plaintiff, who had been injured in a collision between vehicles owned by the Southern Public Utilities Co. and the Southeastern Express Co., joint tort-feasors, gave to the Express Co., for a consideration of $500.00, a covenant in which he agreed (1) "to forever refrain from instituting, procuring, or in any way aiding any suit, cause of action, or claims against the Southeastern Express Company and all persons, firms, and/or corporations for whose acts or to whom said party or parties might be liable," on account of a certain accident; and (2) "to save harmless and indemnify the parties from all else and/or expense resulting from any such suit, cause of action or claim." The plaintiff, covenantor, expressly reserved, however, "all rights to proceed against any person or persons other than the parties aforesaid for all loss and/or expense arising out of said accident." When the plaintiff sued it, the Utilities Company, although a joint tort-feasor, made no contention that it had been released

from suit by the covenant quoted above, notwithstanding that the contribution statute, then N.C. Code of 1931, § 618, now G.S. 1-240, was in effect. The Utilities Company merely contended — correctly, this Court held — that it was entitled to credit the judgment which the plaintiff secured against it with the $500.00 the Express Co., covenantee, had paid the plaintiff.

The efforts of legal draftsmen to anticipate and guard against every potential hazard in any instrument entrusted to them, particularly one involving insurance matters, often result in labored documents subject to different interpretations. Such instruments end up not well-wrought, but over-wrought. It is still the law, however, that "(t)he heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E. 2d 295, 297; *accord, Howland v. Stitzer*, 240 N.C. 689, 84 S.E. 2d 167. On these indicia, we hold that defendant is not a covenantee within the protection of the covenant between plaintiffs and Hinkley. Had plaintiffs understood him to be, it is hard to believe they would have instituted a suit against him within eleven days after signing a covenant not to sue him.

Although this point was not discussed in the briefs, we note that, irrespective of what construction is put on the covenant signed by Marguerite M. Hotchkiss, mother and natural guardian of plaintiff Barbara Sell, minor, defendant could not use it as a defense to the minor's suit against him. A parent cannot bind his minor child by the execution of such a covenant as the one we have here. The settlement of an infant's tort claim becomes effective and binding upon him only upon judicial examination and adjudication. *Oates v. Texas Co.*, 203 N.C. 474, 477, 166 S.E. 317, 318; *Rector v. Logging Co.*, 179 N.C. 59, 101 S.E. 502. See *Gillikin v. Gillikin*, 252 N.C. 1, 113 S.E. 2d 38.

The order of the trial judge sustaining the demurrer and allowing the motion to strike defendant's Second Further Answer and Defense is

Affirmed.