LEDBETTER BROTHERS, INC., AND HARTFORD ACCIDENT AND INDEMNITY COMPANY v. THE NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

No. 8310SC192

(Filed 1 May 1984)

1. **Highways and Cartways § 9— highway construction contract—no right of action by subcontractor's surety**

   Where a highway construction contract provided that a subcontractor could not assert a claim against the Department of Transportation, a subcontractor's surety had no standing to challenge the Department of Transportation's assessment of liquidated damages under the contract.

2. **Assignments § 1; State § 4.3— highway construction contract—"hold harmless" agreement between contractor and subcontractor's surety—no assignment of claim against State—right of contractor to challenge liquidated damages**

   A "hold harmless" agreement between the general contractor of a highway construction project and a subcontractor's surety did not constitute an assignment of a claim against the State in violation of G.S. 147-62, but was an indemnity agreement, and as long as the indemnitee remained unpaid, it was a real party in interest with standing to challenge the Department of Transportation's assessment of liquidated damages under the construction contract.

3. **Damages § 7— highway construction contract—liquidated damages clause—when effective**

   A liquidated damages clause of a highway construction contract which was to take effect upon failure "to complete the work by the completion date" did not require only substantial performance to preclude the assessment of liquidated damages but permitted liquidated damages until the project was finally accepted, and liquidated damages could properly be assessed for failure to complete sign and guardrail work on time.

**4. Damages § 7— highway construction contract—validity of liquidated damages clause**

The liquidated damages provision of a highway construction contract was not an unenforceable penalty and was valid where (1) it was undisputed that the damages that the parties might reasonably anticipate were difficult to ascertain, and (2) the actual damages amounted to a minimum of 50% of the liquidated damages assessed, the liquidated damages amounted to only 1.5% of the total contract price, and the amount assessed was thus reasonably proportionate to the actual damages incurred.

APPEAL by plaintiffs from *Brannon, Judge.* Judgment entered 6 October 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 19 January 1984.

*Moore, Van Allen and Allen, by Arch T. Allen, III and Joseph W. Eason, for plaintiff appellants.*

*Attorney General Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for defendant appellee.*

BECTON, Judge.

This case involves a challenge, by a general contractor and the surety for a subcontractor on a State highway project, to a Superior Court judgment upholding the Department of Transportation's (DOT's) assessment of liquidated damages from contract retainages. We affirm the judgment.

I

Ledbetter Brothers (Ledbetter) entered into a general contract with the DOT to perform some $3,300,000 in highway renovation. The work was to be completed by 1 December 1977. Part of it involved moving and replacing signs and guardrails. Ledbetter subcontracted the sign and guardrail work to SMS, Inc. (SMS), and, as required by the general contract, SMS provided a performance bond issued by Hartford Accident and Indemnity Company (Hartford) guaranteeing its performance.

The sign and guardrail work was not completed by the contract date, although the highway was open to the public. SMS completed the guardrail work by 5 January 1978, and it relocated and replaced all required signs by 16 February 1978. Shortly after 16 February 1978, the DOT inspected the new and relocated signs and found many of them to be defective and, accordingly, rejected

them. In particular, reflectorized replacement signs were not sufficiently legible at night. At about the same time, SMS defaulted on the work remaining under the subcontract (including replacement and correction of the rejected signs), filed bankruptcy, and abandoned work on the project. Hartford, as surety for SMS, arranged to have the defective work corrected, and the DOT accepted the project on 15 May 1978.

The general contract contained a liquidated damages provision which stipulated damages at a rate of $300.00 per day. Upon final payment to Ledbetter in December 1978, the DOT withheld $49,500.00, representing damages at the contract rate for the 165 days from 1 December 1977 to 15 May 1978. Ledbetter and Hartford sought recovery of the liquidated damages by administrative appeal. The claim was disallowed by the DOT on 20 July 1979. Ledbetter and Hartford then brought the present action in Wake County Superior Court. The trial court, sitting as trier of fact, found the liquidated damages withheld valid and proper, and dismissed the claims, finding that neither party had standing in any event. From this judgment, Ledbetter and Hartford appeal.

II

We first address the standing questions. The trial court found that Ledbetter had assigned its unliquidated claim to Hartford, and that, therefore, Hartford was the real party in interest. It found that such an assignment was void under N.C. Gen. Stat. § 147-62 (1983), the "anti-assignment" statute; that Hartford did not have any subrogation rights against the DOT; and that Hartford, therefore, could not sue the DOT. Apparently because Ledbetter was not the real party in interest, the trial court ruled that Ledbetter's claim should be dismissed. Ledbetter and Hartford complain that this ruling places them in an untenable "catch-22" situation. We agree only as to Ledbetter, and hold that Ledbetter had standing to sue and hence to bring the present appeal.

A.

[1] The contract entered into between Ledbetter and the DOT included by reference the Standard Specifications for Roads and Structures (1972) (SRSS) issued by the North Carolina State Highway Commission, DOT's predecessor. These specifications contain the following provision, SSRS § 108-6:

> The Contractor shall not sublet, sell, transfer, assign, or otherwise dispose of the contract or any portion thereof, or of his right, title, or interest therein, without written consent of the Engineer. . . . The approval of any subcontract will not release the Contractor of his liability under the contract and bonds, nor will the Subcontractor have any claim against the Commission by reason of the approval of the subcontract.

This Court has recently and clearly interpreted this language to mean that had SMS itself remedied the defective work, it would have had no cause of action against the DOT, nor would Ledbetter be entitled to bring such a suit in SMS' behalf, to recover liquidated damages. *Warren Bros. Co. v. Dep't of Transp.*, 64 N.C. App. 598, 307 S.E. 2d 836 (1983). Does Hartford, which remedied the defective work in SMS' behalf as its surety, have a better right?

Hartford argues that having performed in the stead of SMS, it has, by subrogation, a right to proceed against the liquidated damages retained by the DOT. "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. . . . A party can acquire no better right by subrogation than that of the principal." *Dowdy v. Southern Ry. Co.*, 237 N.C. 519, 525, 75 S.E. 2d 639, 643 (1953); *see also Employers Mut. Cas. Co. v. Griffin*, 46 N.C. App. 826, 266 S.E. 2d 18, *disc. rev. denied*, 301 N.C. 86 (1980). When Hartford completed the work which SMS had contracted to do, it therefore acquired no cause of action against the DOT. *Warren Bros. Co. v. Dep't of Transp.* As surety for SMS, the defaulting principal, Hartford could also attempt to recover its payments from the estate of the bankrupt. *See generally* 74 Am. Jur. 2d *Suretyship* §§ 168-177 (1974). However, Hartford has shown no authority for its assertion that it is entitled to recover against the DOT itself, and therefore the ruling dismissing its claim was correct.

B.

[2] With respect to the dismissal of Ledbetter's claim, on the other hand, the trial court committed error. The contract between SMS and Ledbetter contained a "hold harmless" clause. Subsequent to the default of SMS, Ledbetter and Hartford entered into an agreement incorporating a similar provision. The trial court apparently confused these provisions with the separate obligation

on the part of SMS and then Hartford to actually complete the work, and ruled that they constituted a void assignment of a claim against the State under G.S. § 147-62 (1983), the "anti-assignment" statute. That statute provides in relevant part:

> All transfers and assignments made of any claim upon the State of North Carolina or any of its departments, bureaus or commissions or upon any State institution or of any part or share thereof or interest therein, whether absolute or conditional and whatever may be the consideration therefor and all powers of attorney, orders or other authorities for receiving payment of any such claim or any part or share thereof shall be absolutely null and void unless such claim has been duly audited and allowed and the amount due thereon fixed and a warrant for the payment thereof has been issued; and no warrant shall be issued to any assignee of any claim or any part or share thereof or interest therein
> . . . .

The appellate courts of this State have not construed this language to date. However, certain principles are clear. An "assignment" involves a transfer from one to another, usually in exchange for some consideration. *Black's Law Dictionary* 109 (5th ed. 1979); *Morton v. Thornton*, 259 N.C. 697, 131 S.E. 2d 378 (1963). The "hold harmless" agreements did not purport to assign or transfer anything; rather they constituted an indemnity, whereby SMS and later Hartford agreed to assume secondary liability in the event a claim by Ledbetter against the DOT failed. *See New Amsterdam Cas. Co. v. Waller*, 233 N.C. 536, 64 S.E. 2d 826 (1951); 41 Am. Jur. 2d *Indemnity* §§ 3-4 (1968). Neither the record nor the agreement itself suggests that Hartford has actually paid Ledbetter pursuant to the hold harmless agreement. It is elementary that as long as Ledbetter remained unpaid, even in part, it remained a real party in interest, as our courts have uniformly held in indemnity (particularly insurance) cases. *See e.g. Sec. Fire & Indem. Co. v. Barnhardt*, 267 N.C. 302, 148 S.E. 2d 117 (1966); *Taylor v. Green*, 242 N.C. 156, 87 S.E. 2d 11 (1955). We find nothing in the "anti-assignment" statute to change this rule, nor does the policy behind such statutes require that an unpaid indemnitee (Ledbetter) be precluded from bringing its claim. *See United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 94 L.Ed. 171, 70 S.Ct. 207 (1949) (discussing policy of similar federal

statute and allowing claim). Accordingly we hold that Ledbetter did in fact have standing to challenge the DOT's assessment of liquidated damages, and the court's ruling to the contrary was error.

### III

We now address the merits of the claim that the damages withheld were unreasonable. Plaintiffs contend that the liquidated damage provision was not intended to apply to the period between substantial performance of the contract and final acceptance, and that the provision is an invalid penalty clause on its face and as applied. The DOT contends that the contract is incomplete until accepted and that the damages withheld are therefore appropriate.

### A.

[3] The contract incorporated by reference the Standard Specifications for Roads and Structures (1972) (SSRS) issued by the N.C. Highway Commission, the predecessor to DOT. It provided for liquidated damages as follows, SSRS § 108-11:

It is mutually recognized that *time is an essential element of the contract*, and that *delay in completing the work will result in damages due to public inconvenience, obstruction to traffic, interference with business, and the increasing of engineering, inspection, and administrative costs to the Commission.* It is therefore agreed that in view of the difficulty of making a precise determination of such damages, a sum of money in the amount stipulated in the contract will be charged against the Contractor for each calendar day that the work remains *uncompleted after the expiration of the completion date*, not as a penalty but as liquidated damages.

Should the Contractor or, in case of default, the Surety fail *to complete the work by the completion date*, a deduction of the amount stipulated in the contract as liquidated damages will be made for each and every calendar day that such contract remains *uncompleted.* This amount will be deducted from any money due the Contractor or his Surety under the contract, and the Contractor and his Surety will be liable for any liquidated damages in excess of the amount due.

In case of default of the contract and the completion of the work by the Commission, the Contractor and his Surety will be liable for the liquidated damages under the contract, but no liquidated damages will be chargeable for any delay in the final *completion* of the work by the Commission due to any action, negligence, omission, or delay of the Commission.

In any suit for the collection of or involving the assessment of liquidated damages, the reasonableness of the amount stipulated in the contract will be presumed. The liquidated damages referred to herein are intended to be and are cumulative, and will be in addition to every other remedy now or hereafter enforceable at law, in equity, by statute, or under the contract.

Permitting the Contractor to *continue and finish the work* or any part thereof after the expiration of the *completion date* shall in no way operate as a waiver on the part of the Commission of any of its rights under this contract. (Emphasis added.)

Since the terms "completion of work" and "complete" are arguably ambiguous, and since the DOT drafted the contract, plaintiffs contend that any ambiguity should be construed against the DOT. *See Wood-Hopkins Contracting Co. v. State Ports Auth.*, 284 N.C. 732, 202 S.E. 2d 473 (1974). Therefore, they argue the contract requires only substantial performance to preclude assessment of liquidated damages.

This Court must construe the contract as a whole and examine each provision in its proper relation to the others. *Sell v. Hotchkiss*, 264 N.C. 185, 141 S.E. 2d 259 (1965). Upon examination of the contract as a whole, and in light of the public policy involved, we conclude that the contract is clear, that plaintiffs' interpretation is incorrect and that liquidated damages are properly assessable until the time the project is finally accepted. The damages provision takes effect on failure "to complete the work by the completion date." "Work" is defined in the contract as including everything necessary to the "*successful* completion of the project." SSRS § 101-75. (Emphasis added.) "Completion date" is defined as the time by which the work is to be "*satisfactorily* completed." SSRS § 101-16. (Emphasis added.) The contract contains elaborate provisions governing inspection by the DOT. *See*

SSRS § 105-17. Under our law such "satisfaction" provisions clearly invest the inspecting party with discretionary power to reject, subject only to restrictions of good faith. *See Fulcher v. Nelson,* 273 N.C. 221, 159 S.E. 2d 519 (1968); *see also Mezzanotte v. Freeland,* 20 N.C. App. 11, 200 S.E. 2d 410 (1973), *cert. denied,* 284 N.C. 616, 201 S.E. 2d 689 (1974); 5 S. Williston, *Law of Contracts* §§ 675A-B (3d ed. 1961); 17A C.J.S. *Contracts* §§ 494-95 (1963). It would clearly be inconsistent with such discretionary power to interpret the contract so as to deny the DOT the major contemplated means of assuring timely completion of the work in a manner satisfactory to it. The record does not suggest that the DOT has acted in bad faith in any way.

Moreover, the liquidated damages provision itself expressly recognizes that failure to complete the work would result in increased inspection and administrative costs to the DOT. The damages contemplated therefore necessarily included the inspection costs arising *before* final acceptance, even though substantial performance might be complete. The damages provision itself, with the definitions supplied elsewhere in the contract, thus clearly indicates the intent to allow damages up to final acceptance.

Other relevant provisions support this interpretation. The specialty specifications relating to the sign work provide that no part of the project will be accepted until the entire project is ready for final acceptance. The contract specifically called for night inspections to check reflectivity. In the general provisions, final inspection takes place upon "apparent completion," and only if the construction "is found to be satisfactorily completed" will the project be accepted. SSRS § 105-17. On default, the contractor is entitled to payment only for work "satisfactorily completed." SSRS § 108-9(D). Contractors and sureties remain obligated until completion *and* acceptance. SSRS §§ 108-9(F); 108-14. Payment is not due until final acceptance. SSRS § 109-8 to -10.

Aside from their compensatory function, liquidated damages provisions have long been held valid and consistent with public policy as an appropriate means of inducing due performance. *See Robinson v. United States,* 261 U.S. 486, 67 L.Ed. 760, 43 S.Ct. 420 (1923). It would frustrate this policy, and increase the likelihood of inconvenience and danger to the public, to allow disputes over substantial performance to affect such provisions. The intent of

the damages provision is clear and its application proper. Plaintiffs do not contend that the DOT wrongfully delayed acceptance or otherwise contributed to an excessive number of days for which damages were assessed. As a matter both of contract interpretation and of public policy, then, plaintiffs' interpretation of the contract must fail.

## B.

[4] Plaintiffs contend that the liquidated damages provision constitutes an unenforceable penalty, both on its face and as applied. A penalty is unenforceable under North Carolina law. *City of Kinston v. Suddreth*, 266 N.C. 618, 146 S.E. 2d 660 (1966). A stipulated damages clause in a highway contract is not *per se* a penalty, however. *See L. A. Reynolds Co. v. State Highway Comm'n*, 271 N.C. 40, 155 S.E. 2d 473 (1967). Such provisions are widely used in construction contracts and have been generally enforced as an appropriate remedy for breach. *See* Annot., 12 A.L.R. 4th 891 (1982). The dispositive test was set forth by our Supreme Court:

> Whether a stipulated sum will be treated as a penalty or as liquidated damages may ordinarily be determined by applying one or more aspects of the following rule: '[A] stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach.'

*Knutton v. Cofield*, 273 N.C. 355, 361, 160 S.E. 2d 29, 34 (1968) (quoting 22 Am. Jur. 2d *Damages* § 214 at 299 (1965)). The result of the application of this test will also depend on the factual circumstances of each case. *Id.*; Annot., 12 A.L.R. 4th 891, 900 (1982).

It is undisputed that the damages that the parties might reasonably anticipate were difficult to ascertain; in fact, the liquidated damages provision itself contains a recitation to that effect. SSRS § 108-11. Plaintiffs attempt to avoid the operation of this clause by arguing that the multiplicity of potential breaches and the lack of any adjustment mechanism make the liquidated

damages provision invalid. However, the very multiplicity of possible breaches in a large and complex project such as this is what makes damages difficult to ascertain in the first place. Plaintiffs' apparent contention that the DOT may only assess liquidated damages in proportion to the relative value of the breach as against the value of the contract as a whole overlooks this fundamental rationale for liquidated damages provisions, and if implemented would serve only to foster additional wasteful litigation. Moreover, the dollar amount of liquidated damages is set by a separate stipulation not contained in the pre-printed SSRS. There is no suggestion that this figure was arrived at by unfair means, or that it does not represent part of the bargained-for contract. We conclude that the first prong of the *Knutton* test has been satisfied.

Accordingly, if either (1) the amount stipulated was a reasonable estimate of damages *or* (2) it was reasonably proportionate to the actual damages, the second prong of the *Knutton* test was also satisfied. The DOT presented evidence that the delay had caused it to incur $44,837.36 in additional costs. This figure very closely approximates the $49,500.00 in liquidated damages actually withheld. Plaintiffs argue that certain portions of the alleged actual damages represented costs that would have been incurred anyway, and that a breakdown by periods indicates that overcharges of up to 90% resulted for certain months of the delay period. No precise mathematical formula exists for determining what is "reasonably proportionate;" the following language of our Supreme Court is instructive:

> [I]t is the general rule that the amount stipulated in a contract as liquidated damages for a breach thereof, if regarded by the court as liquidated damages and not as a penalty, may be recovered in the event of a breach *even though no actual damages are suffered.* [Citations omitted.] Unless the provision for liquidated damages be regarded as a penalty and unenforceable, the effect of such clause in a contract 'is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby [prevent] a controversy between the parties as to the amount of damages. . . . [T]he sum stipulated forms, in

general, the measure of damages in case of a breach, and the recovery must be for that amount.'

*Knutton v. Cofield*, 273 N.C. at 362-63, 160 S.E. 2d at 35-36 (quoting 22 Am. Jur. 2d *Damages* § 235 at 321 (1965)) (emphasis added); *see also* Restatement (Second) of Contracts § 356 comments a and b (1981); Annot., 12 A.L.R. 4th 891, 936-48 (1982). These authorities indicate that the disproportion must be such as to shock the judicial conscience for a penalty to be found. In applying this test, the value of the contract as a whole also bears on the question of proportion. *Id.* In this case, even if we accept plaintiffs' arguments concerning actual damages as true, they still amounted to at least 50% of the liquidated damages assessed; the liquidated damages themselves amounted to only approximately 1.5% of the total contract price. Accordingly, the second prong of the *Knutton* test was satisfied, since the amount assessed was reasonably proportionate to the actual damages incurred. We must therefore further conclude that the trial court did not err in ruling that the liquidated damages clause was valid as written and applied, and that the DOT's assessment was entirely proper. *Knutton v. Cofield*.

### IV.

In conclusion, although the trial court ruled incorrectly on Ledbetter's standing to sue, that error did not affect its order on the merits. The judgment appealed from is therefore

Affirmed.

Judges ARNOLD and WHICHARD concur.